**RECORD NO. 21-6206**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**EDWARD NELLSON**

*Appellant,*

v.

**JOHN DOE, Warden of USP Hazelton**
**JOHN DOE, Lt. at USP Hazelton**
**GREGORY MIMS, and**
**LEIGH BIRD**

*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF WEST VIRGINIA
Wheeling

# OPENING BRIEF OF APPELLANT

Mario B. Williams
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
mwilliams@ndh-law.com
404-254-0442
*Counsel for Edward Nellson*

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND OTHER INTERESTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1 of the Fourth Circuit, Michael Walker, Mr. Nellson-Appellant, make the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity?
    No.

2. Does party/amicus have any parent corporations? If yes, identify all parent corporations, including grandparents and great-grandparents corporations:

    No.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? If yes, identify all such owners:

    No.

4. Is there any publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 2.6.1(b))? If yes, identify entity and nature of interest:

    No.

5. Is party a trade association?

    No.

6. Does this case arise out of a bankruptcy proceeding? If yes, identify any trustee and the members of any creditors' committee:

    No.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES……………………………………..……….iii

STATEMENT OF JURISDICTION……………………………………..1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW………………..1

STATEMENT OF FACTS……………………………………………………2

PROCEDURAL HISTORY……………………………………………...6

SUMMARY OF THE ARGUMENT…………………………………………7

ARGUMENT AND AUTHORITIES…………………………………….. 10

I.    Standard of Review……………………………………………...10

II.    Mr. Nellson did, in fact, allege Warden Coakley's and SHU Lt. Soule's Personal Involvement in the deprivations of Mr. Nellson's constitutional rights………………………………………………...10

    A.  The District Court incorrectly held that Mr. Nellson had not pled individual involvement on the part of Defendants Coakley and Soule……………………………………………….……11

    B.  The District Court improperly reached unsupported conclusions that being placed in the SHU is a medical decision………………13

III.    Mr. Nellson sufficiently met his burden as to both prongs of his deliberate indifference claims………………………………………...14

    A.  Mr. Nellson had a serious medical need that required treatment: he could not walk…...……………………...…………………….15

    B.  Defendants stated they were entitled not to give Mr. Nellson an assistive device while in the SHU, and the District Court just accepted that statement…………………………………...……..17

    C.  The District Court ignored very well-settle caselaw that a medical condition which threatens the ability to work is serious and must be addressed in jails………………………………………19

IV.   The District Court improperly interpreted and applied West Virginia's MPLA……………..……………………………………25

   A. Post-litigation notice leads to stay, and not dismissal under the West Virginia Code…………..…………………………………...25
   B. Mr. Nellson complied with the MPLA's substantive requirement of communicating theories of the case by mailing a copy of the Complaint along with his notice of litigation………..…………...28

V.   Mr. Nellson's medical malpractice claims against Defendants Mims and Byrd were improperly dismissed…………..………………29

   A. The District Court erroneously re-fashioned Mr. Nellson's *Bivens* claims against individual Defendants into tort claims only, thereby impermissibly ignoring them as *Bivens* claims…....30
   B. The District Court incorrectly dismissed Mr. Nellson's claims under the FTCA rather than substituting the correct Defendant in the instant case…………..………………………………………..32
   C. As stated above, the District Court improperly found non-compliance with the W. Va. MPLA……………………….……...34

REQUST FOR ORAL ARGUMENT……………………………………35
CONCLUSION………………………………………………………………35
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Brice v. Virginia Beach Correctional Ctr.*,
  58 F.3d 101, 104 (4th Cir. 1995)…………………….………………..…..15, 18

*Brown v. Hughes*,
  894 F.2d 1533, 1538 (11th Cir.1990)………………………………………..20

*Brown v. Lamanna*,
  304 F. App'x 206, 208 (4th Cir. 2008)…………………………..………17

*Bush v. Lucas*,
   462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)…………...…….31

*Carlson v. Green,*
  446 U.S. 14, 100 S. Ct. 1468 (1980) …………….…………………………30, 31

*Coppage v. Mann*,906 F. Supp. 1025, 1037 (E.D. Va. 1995)…………...……….16

*Duarte v. Wong,*
   No. 05-01374, 2007 WL 2782940, at *4 (N.D. Cal. Sept. 24, 2007)…...…….21

*Dunbar Corp. v. Lindsey*,
   905 F.2d 754, 762 (4th Cir. 1990)………………………………………….30

*Ellis v. Ficano*,
   No. 94-1039, 1995 WL 764127, at *6 (6th Cir. Dec. 27, 1995)……..………33

*Equinor USA Onshore Properties Inc. v. Pine Res., LLC,*
  917 F.3d 807, 813 (4th Cir. 2019)……………………………………….....10

*FDIC v. Meyer*,
  510 U.S. 471, 475 (1994)……………………………………………….…33

*FindWhat Inv'r Grp. v. FindWhat.com,*
  658 F.3d 1282, 1307 (11th Cir. 2011)……………………………………..…15

*Giambalvo v. Sommer*,
   2012 WL 4471532, at *5 (S.D.N.Y. Sep. 19, 2012)……………………..21, 27

*Giambalvo v. United States*,
    No. 1:11CV14, at *13-15 (N.D.W. Va. Mar. 22, 2012)……………..……….26

*Gonzalez v. Bopari*,
    No. 12-1053, 2014 WL 6925750, at *3 (E.D. Cal. Dec. 9, 2014)…………...21

*Greeno v. Daley*,
    414 F.3d 645, 655 (7th Cir. 2005)……………………………………………..18

*Harper v. Lappin*,
    No. 5:09-CT-3200-D, at *4 (E.D.N.C. Feb. 4, 2011)…………………..……11

*Harris v. Hershey Med. Ctr.*,
    No. 08-843, 2009 WL 2762732, at *5 (M.D. Pa. Aug. 27, 2009)………..…..21

*Johnson v. Hardin Cty.,*
    908 F.2d 1280, 1283-84 (6th Cir. 1990)……………………………………….20

*Johnson v. United States,*
    394 F.Supp.2d 854, 858 (S.D. W.Va. 2005)………………………………...29

*Kaufman v. Carter*,
    952 F.Supp. 520, 527 (W.D. Mich. 1996)…………………………………...19

*Kerns v. United States*,
    585 F.3d 187, 194 (4th Cir. 2009)……………………………………....…33

*LaFaut v. Smith*,
    834 F.2d 389, 393-94 (4th Cir. 1987)……………………………………..20

*Lineberry v. Johnson*,
    No. 5:17-04124, at *26 (S.D.W. Va. Aug. 10, 2018) ………………………31

*Littlepaige v. United States*,
    528 F. App'x 289, 7 (4th Cir. 2013)………………………………….……..32

*Mahoney v. Schweitzer*,
    2010 WL 1707734, *1 (D. Mont. Jan. 26, 2012)…………………………....21

*Mandel v. Doe*,
    888 F.2d 783, 788 (11th Cir. 1989)………………………………………….....20

*McCants v. Berringer*,
    No. 1:17CV935, at *9 (M.D.N.C. Aug. 8, 2018)……………………...…24

*McElligott v. Foley*,
    182 F.3d 1248, 1258 (11th Cir. 1999)……………………………….…..18

*Medina v. United States*,
    259 F.3d 220, 223 (4th Cir. 2001)……………………………….……..33

*Militier v. Beorn*,
    896 F.2d 848, 854 (4th Cir. 1990)……………………………………..13, 14

*Miller v. Rao*,
    No. 08-2469, 2013 WL 6240672, at *6 (W.D.N.Y. Dec. 3, 2013)………….21

*Monmouth Co. Correctional Institution Inmates v. Lanzaro*,
    834 F.2d 326, 347 (3d Cir. 1987)……………………………...…….16

*Morton v. NFN Fields*,
    No. 2:04-1185-27, at *7 (D.S.C. Mar. 28, 2005)……………………..…..15

*Parzyck v. Prison Health Servs., Inc.*,
    290 F. App'x 289, 291 (11th Cir. 2008)…………………………..……20

*Petties v. Carter*,
    795 F.3d 688, 693 (7th Cir. 2015)………………………………….20

*Poppell v. United States*,
    No. RDB-10-03549, at *2 n.1 (D. Md. May 7, 2012) ……………….…...32

*Reynolds v. Barnes*,
    84 F. App'x 672, 674 (7th Cir. 2003)………………………………….20

*Rizzo v. Goode*,
    423 U.S. 362, 376-77 (1976)……………………………………….…….11

v

*Ruffin v. Deperio*,
    97 F. Supp. 2d 346, 352 (W.D.N.Y. 2000)……………………………..…..22

*Shakka v. Smith*,
    71 F.3d 162, 167 (4th Cir. 1995)……………………………………………20

*Shaw v. Stroud*,
    13 F.3d 791, 799 (4th Cir. 1994)……………………………………..…..11

*Skaggs v. Clark,*
    No. 3:13-3293, at *14-16 (S.D.W. Va. Mar. 31, 2016)………………..…19

*Smith v. Allison,*
    No. 10-01814, 2015 WL 3466529 (E.D. Cal. June 1, 2015)………………..20

*Smith v. Goss,*
    No. 10- 01814, 2015 WL 1249871, at *3 (E.D. Cal. Mar. 18, 2015)…….....20

*Sosebee v. Murphy*,
    797 F.2d 179, 181 (4th Cir. 1986)……………………………….…..32

*Stanley v. United States,*
    321 F.Supp.2d 805, 806–807 (N.D. W.Va. 2004) ………………...…..25, 33

*Taylor v. Plousis,*
    101 F. Supp 2d 255, 262 (D.N.J. 2000)………………………...………19

*United States v. Sherwood*,
    312 U.S. 584, 586 (1941)………………………………………………32

*Welch v. United States*,
    409 F.3d 646, 650 (4th Cir. 2005)……………………………...…………32

*Westmoreland v. Vaidya,*
    664 S.E.2d 90, 96 (W. Va. 2008)…………………………………..26, 27

**Statutes, Rules & Regulations**

5 U.S.C. § 3374(c)……………………………………………….…..33

28 C.F.R. §§ 15.3 - 15.4……………………………………….………34

28 U.S.C. § 1291……………………………………………….…...1

28 U.S.C. § 1346(b)………………………………………………….32

28 U.S.C. § 2671-80…………………………………………….…...32

42 U.S.C. § 1983……………………………………………...…..11

Fᴇᴅ. R. Cɪᴠ. P. 8(a)……………………………………………..28

W. Va. Code § 55-7B-6…………………………………………..…34

W.Va. Code § 55-7B-1…………………………………………...…34

## STATEMENT OF JURISDICTION

Because the district court order granted a motion to dismiss and summary judgment and dismissed the case, the decision was final and thus this Court has jurisdiction pursuant to 28 U.S.C. Section 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in its application of the summary judgment standard by assuming Defendant's evidence to be true, rather than giving the non-moving party, Mr. Nellson, the benefit of every inference and, as a result, improperly dismissed Mr. Nellson's claims for deliberate indifference.

2.     Whether the District Court erred in its interpretation and application of the West Virginia medical malpractice pre-suit requirements by holding that: 1) failure to comply must result in dismissal and 2) Mr. Nellson's notification was substantively deficient and, as a result, improperly dismissed Mr. Nellson's medical malpractice claims.

3.     Whether the District Court erred by dismissing Mr. Nellson's FTCA claims because the FTCA does not apply to *Bivens* claims against individual Defendants. Further, even if the claims *were* subject to the FTCA as medical malpractice claims, whether the District Court's application of the FTCA was erroneous because: a) if the United States is a proper party to the action, it has the

option of substituting itself into the case and b) the District Court improperly applied the West Virginia MPLA to dismiss under the FTCA.

## STATEMENT OF FACTS

### I.  Mr. Nellson's initial injury.

On March 28, 2016, Mr. Nellson fell from his bunk, approximately six feet off the ground, onto his head. JA 152, ¶ 7. He was unable to stand when he regained consciousness. *Id*. He immediately reported pain and dizziness. *Id*. Mr. Nellson would not receive a thorough and accurate diagnosis until March of 2018, two years later, when he was finally diagnosed with disk extrusion, cord compression, disk herniation, and a disk bulge. *Id*. at ¶ 9 (citing Ex. 2, JA 421.)

Shortly after his fall, Mr. Nellson began experiencing seizures, excruciating pain, and difficulty walking as a result of his injury. *Id*. In fact, as an immediate result of the fall, Mr. Nellson reported dizziness, tingling, and pain which he rated on the pain scale as reaching 8 out of 10. JA 421, JA 423. By April 2016, Mr. Nellson reported he could not walk unsupported. JA 568.

That same month, Mr. Nellson was transferred to USP Big Sandy in Kentucky. JA 152, ¶ 27. Once there, PA Billiter noted that Mr. Nellson could not stand, stating: "[a]n attempt was made to have the prisoner stand with two officers and myself bracing the prisoner. It was unsuccessful. Inmate became extremely dizzy and he stated that he feared he would fall…" JA 432 at 1; JA 152, ¶ 29. In May

2

2016, Dr. Rosario in Kentucky noted, in Mr. Nellson's medical records, "Multiple head traumas, unable to stand unassisted." JA 460; JA 152, ¶ 31. *Id*. When Mr. Nellson arrived at USP Hazelton in West Virginia, he was immediately identified as an individual who could not walk unassisted. JA 152 at 39; JA 465.

## II. Defendants' Repeated Failure to Diagnose or Treat Mr. Nellson's Injury.

In December 2016, Mr. Nellson arrived at FCC Hazelton. JA 249, ¶ 5. Mr. Nellson immediately reported that he could not walk unsupported and he presented with a walker. *Id*. at ¶ 5. On December 20, 2016, medical records indicate that Mr. Nellson was "marginally able to ambulate," but that he needed assistance. JA 152, ¶ 47. Three days later, Defendant Bird reviewed Mr. Nellson's medical records, which included repeated findings that Mr. Nellson could not walk unassisted, was experiencing excruciating pain, and had been given at wheelchair at times. JA 152, ¶ 48. Despite this, Defendant Bird failed to provide Mr. Nellson with pain medication, neurological medications, muscle relaxants, physical therapy, or an assistive device for ambulation. *Id*. As a result of this, Mr. Nellson fell numerous times, sustaining additional injuries. JA 152, ¶ 49. Further, Mr. Nellson's medical condition deteriorated to the point of being fatal.

In late 2016, Mr. Nellson had a seizure. JA 152, ¶¶ 45-51. Rather than render aid, staff responded by further victimizing Mr. Nellson. *Id*. A witness of the events stated as follows: "A group of staff responded by entering the cell & hogtying Eddie.

3

Wrist to ankles behind back and & strapping him (face down) on a hospital gurney. Staff continuously kept screaming at him about using drugs & overdosing. When Eddie came back out of medical he next day his face & body were covered in bruises & he had 3 broken ribs." JA 152, ¶ 46 (citing JA 209.)

### III.  Defendants' Placement of Mr. Nellson in Solitary Confinement for Months Without Assistive Device.

In May 2017, Defendants placed Mr. Nellson in SHU without a walker or wheelchair for three months. JA 152, ¶ 54. **All four Defendants observed Mr. Nellson's inability to walk and yet approved placing Mr. Nellson in SHU without a wheelchair.** JA 152, ¶ 55. During his three months in the SHU, Mr. Nellson crawled on the floor, unable to ambulate. *Id*. at ¶ 56. He developed sores on his knees that bled and leaked pus because he was forced to crawl on the ground. *Id*. at ¶ 57. He also strained his back. *Id*. at ¶ 58. In August 2017, Mr. Nellson was dragged back to his cell. He sent an email to his healthcare providers on August 27, 2017, stating, "Since my release from SHU, all of my gains are lost and my medical issues are worse. I am in PAIN. Also, I have become much weaker, and my balance is worse (I fell over while using my walker 2 times). My other symptoms are all also worse, [due] to some combination of SHU conditions and having my head stomped repeatedly while handcuffed (in SHU). I want medical treatment." JA 216. Rather than help, Defendants approved and meted out more punishment.

In September 2017, one month later, Mr. Nellson was placed back in SHU by Defendants, without a wheelchair. *Id*. at ¶ 64. The Amended Complaint alleges that "this decision was directed, approved, and implemented by USP Hazelton Defendants." Id. at ¶ 65. For purposes of a motion to dismiss, Mr. Nellson's allegations must be taken as true. Further, based on the allegations and the medical records, all Defendants knew Mr. Nellson could not walk and needed a wheelchair. Yet, Defendants did nothing to provide him with one. Indeed, Defendants (in their own Motion to Dismiss) consider Defendant Mims' and Bird's determination that Mr. Nellson "did not need a wheelchair" justified as of September 2017. JA 249, ¶ 13. This was not true then and is not true now. Mr. Nellson continues to use a wheelchair and his condition has only deteriorated.

In October 2017, Mr. Nellson was seen by outside physician Dr. Duru at VCU. JA 473. Dr. Duru contradicted all of Defendant Bird's findings. Dr. Duru correctly identified the fact that Mr. Nellson had gait instability. JA 477. Dr. Duru ordered not only a brain MRI and a spine MRI. *Id*. Dr. Duru noted that Mr. Nellson was "unable to stand let alone walk." *Id*. Finally, Defendant Mims ordered a spine MRI one month before Mr. Nellson was transferred, ensuring he would not receive it until much later. Clearly, then, Mr. Nellson could not walk in 2016 and 2017.

## PROCEDURAL HISTORY

Mr. Nellson brought his initial complaint in the United States Court for the District of Columbia pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971). JA 12. The initial Complaint was then transferred to the United States District Court for the Eastern District of Kentucky on May 7, 2020. JA 71. Mr. Nellson filed a Motion to Sever and Transfer Venue on June 5, 2020 [JA 77], and thereafter the claims asserted in the initial Complaint against defendants "Warden John Doe of USP Hazelton," "SHU Lt. John Doe at USP Hazelton," "Gregory Mims," and "Leigh Bird" were severed and transferred to the District Court for the Northern District of West Virginia. JA 84. After the defendants filed their first Motion to Dismiss Or, in the Alternative, Motion for Summary Judgment, JA 87, the plaintiff filed an Amended Complaint, JA 152.

In his Amended Complaint, Mr. Nellson stated five causes of action:

- a *Bivens* violation of the Eighth Amendment against all defendants in their individual capacity. *See* JA 152 at 29.
- a *Bivens* supervisory capacity claim against defendants Gregory Mims, Warden Coakley, and SHU Lt. Soule in their individual capacities. *See id*. at 29–30.
- a medical malpractice/negligence against Gregory Mims and Leigh Bird. *See id*. at 30–31.
- a claim for medical malpractice/gross negligence against Gregory Mims and Leigh Bird. *See Id*. at 31–32.
- a medical malpractice/willful and wanton claim against Gregory Mims and Leigh Bird. *See Id*. at 32–33.

*See* JA 152.

On October 6, 2020, Defendants filed the Defendants' Motion to Dismiss Mr. Nellson's Amended Complaint Or, in the Alternative, Motion for Summary Judgment. JA 246. A Response was filed on November 11, 2020. JA 327. On November 23, 2020, a Reply was filed. JA 378.

On January 22, 2021, the District Court judge issued an order granting Defendants' motion to dismiss and motion for summary judgment in its entirety. JA 387. Specifically, the Court dismissed Mr. Nellson's medical malpractice claims and Mr. Nellson's *Bivens* supervisory capacity claims, and granted summary judgment as to Mr. Nellson's deliberate indifference claims. *Id*. These rulings were in error and should be reversible.

## SUMMARY OF THE ARGUMENT

First, the District Court incorrectly dismissed Mr. Nellson's claims against Warden Coakley and the SHU Lt. Soule. For starters, the District Court concluded that "the Mr. Nellson has made no claim that defendants Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton were involved in the violation of his constitutional rights." JA 387 at 10-11. Based on a plain reading of the Complaint, this is incorrect. The Court then built on this incorrect reading of the Complaint to re-state Mr. Nellson's claims against the Warden and the SHU Lt. as claims in their "official capacities." JA 387 at 11. The District Court then concluded that Mr. Nellson had not properly pled supervisory defendant liability pursuant to

*Bivens* because Mr. Nellson had not shown corrective inaction. JA 387 at 11. Because Mr. Nellson *did* plead personal involvement by the Warden and SHU Lt., his claims should not have been dismissed.

Second, the District Court improperly dismissed Mr. Nellson's claims against Defendants Mims and Bird as being claims "more properly" brought under the FTCA. JA 387 at 12. The District Court ignored that claims against defendants that should have been brought under the FTCA, even if not labeled as such, are treated as such. *Id.* This misstep renders the analysis lacking and the dismissal improper.

Third, the District Court incorrectly granted summary judgment as to both prongs of Mr. Nellson's Eighth Amendment deliberate indifference claim (thereby making a finding of qualified immunity). JA 387 at 13-14. The Court summarily concluded that Mr. Nellson got "adequate care" by adopting Defendant's representation of events and failing to account for Mr. Nellson's statements that: 1) he was undermedicated for his pain; 2) he received no physical therapy; 3) he was denied an ambulative assisting device; and 4) **he was placed in solitary confinement for months at a time with no way to get off the ground**. In doing this, the District Court not only made credibility determinations (Defendants are credible, Mr. Nellson is not) but also made every inference in Defendants' favor rather than in Mr. Nellson's, the non-movant.

8

Fourth, the District Court improperly dismissed Counts III, IV, and V as to Defendants Mims and Bird (the "Medical Malpractice Claims"). The District Court relied on two bases to dismiss Mr. Nellson's claims: 1) Mr. Nellson did not serve his pre-suit notice under W. Va. Code § 55-7B-6 (the "MPLA") prior to filing (although he remitted it before serving Defendant Mims and Defendant Bird) and 2) Mr. Nellson did not transmit "a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent. . . ." JA 387 at 17. The first lack of strict compliance is not, under West Virginia law, fatal to claims (in fact, case law specifically states it cannot and should not be fatal to claims). The second basis is incorrect; Mr. Nellson sent Defendants the operative complaint at the time, which contains everything required by statute and more.

Fifth, and last, the District Court incorrectly dismissed Mr. Nellson's claims pursuant to the FTCA. As an initial point, Mr. Nellson brought *Bivens* claims against individual Defendants, individually. While this line seems to have gotten blurred in Defendants' briefing and the Court's Order, it is important to demarcate it. The FTCA does not apply to *Bivens* claims, therefore, none of Mr. Nellson's *Bivens* claims should have been dismissed pursuant to the FTCA. Then, even if the FTCA did apply to claims, the District Court initially (and incorrectly) determined that FTCA claims can ***only*** be brought against the United States Government. This is

9

incorrect. FTCA claims are brought against US Government agents and the US Government substitutes itself in their place if they were acting within the scope of their duties. Further, because the District Court found that Mr. Nellson's claims were to be dismissed under state law for failure to abide by the MPLA, then they would also fail under the FTCA. Because Mr. Nellson's claims *do* comply with the MPLA, they would also survive under the FTCA. Finally, the District Court ruled that Mr. Nellson's claims should be dismissed because they were filed more than six months after the denial of his grievances; again, the FTCA does not apply to Mr. Nellson's *Bivens* claims and therefore should not have been subject to the statute of limitations.

## ARGUMENT AND AUTHORITIES

### I.    Standard of Review

The Court of Appeals applies a de novo review standard to conclusions of law. *Equinor USA Onshore Properties Inc. v. Pine Res., LLC,* 917 F.3d 807, 813 (4th Cir. 2019). Accordingly, because Defendants' dismissals were based on the Court's legal rather than factual conclusions, each is subject to a de novo standard of review.

### II.   Mr. Nellson did, in fact, allege Warden Coakley's and SHU Lt. Soule's Personal Involvement in the deprivations of Mr. Nellson's constitutional rights.

Under federal law, "[a] supervisor may be held responsible for a subordinate's unconstitutional act only if he was involved personally or participated in the

10

unconstitutional act." *Harper v. Lappin*, No. 5:09-CT-3200-D, at *4 (E.D.N.C. Feb. 4, 2011) (citing *Rizzo v. Goode*, 423 U.S. 362, 376-77 (1976)). In order to do so, a plaintiff must show that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor responded so inadequately as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the inaction and a plaintiff's alleged constitutional injury." *Id*. (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted) (discussing 42 U.S.C. § 1983)).

### A. The Court incorrectly held that Mr. Nellson had not pled individual involvement on the part of Defendants Coakley and Soule.

The District Court improperly concluded that Coakley and Soule were not liable for deliberate indifference because the "plaintiff fail[ed] to allege any personal involvement on the part of defendants." JA 387 at 11. That is incorrect.

Mr. Nellson's Complaint specifically alleges Defendant Coakley's involvement in the decisions that led to Mr. Nellson being placed in SHU without a wheelchair as follows:

> Warden John Doe at USP Hazelton signed reviewed and approved the placement of Mr. Nellson in SHU without a means of ambulation, on two separation occasions, for six months. Warden John Doe at USP Hazelton, upon information and belief, read Mr. Nellson's records, including records indicating Mr. Nellson could not walk

11

unassisted. Despite this, Warden John Doe approved Mr.
Nellson being placed in SHU for 3 months at a time, twice,
without a wheelchair or a walker. Warden John Doe's
actions caused extreme mental anguish, pain and
suffering, and physical damages to Mr. Nellson. While in
Hazelton SHU Program, Nelson wrote grievances and
complained about his mistreatment and need for
ambulatory assistance, and upon information and belief,
Warden John read and hear these grievances and
complaint, yet nevertheless kept Mr. Nellson in the SHU
Program.

JA 152, ¶ 41. Despite this allegation, the District Court claimed that Mr. Nellson did

not allege "personal involvement" of Warden Coakley. This holding ignores that Mr.

Nellson pled Warden Coakley: (1) signed, reviewed, and approved the placement of

Mr. Nellson in SHU without an assistive walking device for a total of six months,

(2) knew or should have known that Mr. Nellson could not walk unassisted, and (3)

read and heard of Mr. Nellson's multiple grievances and complaints and took no

action. JA 152, ¶ 41. The Court's conclusion regarding Mr. Nellson's pleading,

therefore, is inconsistent with the record and error.

Further, Mr. Nellson alleged the following as SHU Lt. Soule's

involvement:

SHU Lt. John Doe at USP Hazelton approved the
placement of Mr. Nellson in SHU without a wheelchair or
a walker, failed to report Mr. Walker's inability to walk
while in SHU, and failed to report the suppurating
callouses that Mr. Nellson was experiencing. SHU Lt.
John Doe knew of Mr. Nellson's condition, saw him in
SHU, and yet showed deliberate indifference to his health
and safety.

12

JA 152, ¶ 43.

In light of the allegations listed above, the Court's conclusion is contradicted by the record and cannot stand. Mr. Nellson adequately pled personal involvement by Warden Coakley and SHU Lt. Soule.

### B. The District Court improperly reached unsupported conclusions that being placed in the SHU is a medical decision.

The District Court concluded, *sua sponte,* that the decision to place Mr. Nellson in a SHU without an assistive device was "medical" and therefore all non-medical personnel can take cover under the that label, "non-medical supervisory personnel, like a warden, may rely on the opinion of the medical staff regarding the proper medical treatment of inmates," citing *Militier v. Beorn.* 896 F.2d 848, 854 (4th Cir. 1990); JA 387 at 10. As a first point, *Militier* is inapposite here.

There, the court declined to find supervisory liability for wardens where physicians in the prison declined to perform **a cardiac exam** for a patient who exhibited signs of cardiac distress. *Id*. A cardiac exam is a medical procedure. Here, in contrast, Defendants declined to provide a wheelchair or ambulatory assistance for a man who plainly could not walk, and placed him in the SHU without those devices. Nothing in the record supports that this was a medical decision. Indeed, Defendant's own affidavit states that this was an administrative decision made with no regard to Mr. Nellson's medical condition. JA 507 at 3.

13

The court in *Militier* stated that that the wardens ought not be charged "with ensuring that their subordinates employed proper medical procedures—procedures learned during several years of medical school, internships, and residencies," and states, "***no record evidence suggests*** why the wardens should not have been entitled to rely upon their health care providers' expertise." *Id*. (emphasis added). There is no evidence or allegation that medical personnel recommended placing Mr. Nellson in the SHU or that they recommended he be placed there without a walker or a wheelchair. JA 387 at 10-11. When the District Court stated that Warden Coakley and SHU Lt. Soule "did not and should not substitute their own medical judgment for that of medical professionals" (JA 387 at 10) the Court did not and could not point to *any* medical professional who stated that, in their judgment, Mr. Nellson should be in SHU, crawling around on the floor, developing sores on his knees and hands. Indeed, how could they.

Accordingly, the District Court erred in determining that Mr. Nellson had not properly alleged Warden Coakley's and SHU Lt.'s involvement in Mr. Nellson's Eighth Amendment constitutional violations.

### III.   Mr. Nellson sufficiently met his burden as to both prongs of his deliberate indifference claims.

The District Court held that Mr. Nellson failed to meet his burden as to both prongs of his deliberate indifference claims. JA 387 at 13. It did so in the context of

14

Defendants' motion for summary judgment. In granting summary judgment, the District Court impermissibly made credibility determinations of its own.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Inv'r Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In doing so, "a court may not weigh conflicting evidence *or make credibility determinations of its own.*" *Id*. (emphasis added).

Yet, the District Court made *only* credibility determinations and ignored Mr. Nellson's evidence that he was denied an assistive device, ignored the *admitted fact* that Mr. Nellson was placed in SHU without such an assistive device for *months* at a time, and adopted every one of Defendants' statements as true. *See* JA 387 at 13-14. This is impermissible, especially at the summary judgment stage.

### A. Mr. Nellson had a serious medical need, that required treatment: he could not walk.

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment." *Morton v. NFN Fields,* C/A No. 2:04-1185-27, at *7 (D.S.C. Mar. 28, 2005) (citing *Brice v. Virginia Beach Correctional Ctr.,*58 F.3d 101, 104

15

(4th Cir. 1995)). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that **even a lay person** would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Id*. (citing *Coppage v. Mann*,906 F. Supp. 1025, 1037 (E.D. Va. 1995); *Monmouth Co. Correctional Institution Inmates v. Lanzaro*,834 F.2d 326, 347 (3d Cir. 1987)).

Here, the District Court improperly repeatedly assumed as true the facts as presented by the Defendants that Mr. Nellson's medical needs, and his need for ambulatory assistance were not a "serious medical need." *See* JA 387 at 13-15. For example, the District Court recites Defendant Bird's assertion that she "could not find any indication that [Mr. Nellson] was diagnosed with 'balance equilibrium disorder'" and Bird's assertion that, "she could not find any findings to support the need of an assistive device for ambulation." JA 387 at 13. The Court, however, ignored the fact that regardless of diagnosis, Mr. Nellson **could not walk** and that his medical records indicated as much. JA 152, ¶ 48.

In fact, Mr. Nellson presented evidence that Defendant Bird reviewed Mr. Nellson's medical records, which included repeated findings that Mr. Nellson could not walk unassisted, was experiencing excruciating pain, and had been given at wheelchair at times. JA 152, ¶ 48. Despite this, Defendant Bird failed to provide Mr.

Nellson with pain medication, neurological medications, muscle relaxants, physical therapy, or an assistive device for ambulation. *Id*.

The District Court, by refusing to acknowledge Mr. Nellson's serious medical need not only ignored the record but made every possible inference in Defendants' favor. This is error and should be reversed.

### B. Defendants stated they were entitled not to give Mr. Nellson an assistive device while in the SHU, and the District Court just accepted that statement.

The District Court repeated Defendants' assertion that, as to Mr. Nellson's denial of a wheelchair in SHU, "defendant Mims asserts clearly that 'inmates are typically not permitted to keep mobility devices in their cell in the SHU…due to safety and security concerns.'" JA 387 at 14. Based on this, the District Court granted summary judgment. Pursuant to Fourth Circuit precedent, this holding is reversible error.

In *Brown v. Lamanna*, a prisoner claimed Eighth Amendment violations for failure to provide him a wheelchair or crutches while in SHU. *Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008). The district court granted the defendants motion for summary judgment, which was vacated and remanded by the Fourth Circuit. Id. In Brown, officials provided affidavits that the crutches were not a "medical necessity." *Id.* But the Fourth Circuit found this did not "completely shield Defendants from claims of deliberate indifference." *Id*. Specifically, the Fourth

Circuit found that the condition was "blatant and obvious — he could not stand or walk without assistance and was constantly in a great deal of pain." *Id.* (citing *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (noting that official cannot hide behind an excuse that he was unaware of a risk, if the risk was obvious and that official is charged with confirming inferences he strongly suspects exist)). This is the same for Mr. Nellson.

Further, the defendants in *Brown* were obliged to further investigate his condition to determine if it had deteriorated or whether the initial diagnosis was incorrect. *Id.* (citing *McElligott v. Foley*, 182 F.3d 1248, 1258 (11th Cir. 1999) (holding that jury could find deliberate indifference where prison staff failed to respond to deteriorating condition); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding that "dogged[] persist[ance] in a course of treatment known to be ineffective" can violate the Eighth Amendment)). Defendants' affidavit, at best, shows that they continued with a course of conduct that was not diagnosing Mr. Nellson's ailment and was ineffective in alleviating any of his symptoms of his pain. This can be violative of the Eighth Amendment and in this case, it was.

Finally, the District Court accepted Defendants self-serving statement that they were justified when they placed Mr. Nellson in SHU without a wheelchair, because absent certain "circumstances," assistive devices are not allowed in SHU "due to safety and security concerns." JA 507 at 3. Defendants did not expand on

18

what these "limited circumstances" consist of but apparently, they did not include a prisoner having to drag themselves along the ground for months at a time. The District Court did not address this. Mr. Nellson argued, and re-urges, that his situation should qualify as a "circumstance" allowing an assistive device in SHU and that, in the alternative, Defendants have made absolutely no showing how Mr. Nellson having a wheelchair would create "safety" or "security" concerns. *See* JA 507 at 3 (mentioning the SHU policy regarding assistive devices but providing no explanation for not providing Mr. Nellson his). This would have been a ripe issue to conduct discovery and therefore should have defeated a motion for summary judgment.

The District Court's holding granting summary judgment was in error and should be reversed.

### C. The District Court ignored very well-settled case law that a medical condition which threatens the ability to work is serious and **must** be addressed in jails.

Courts throughout the country, including the Fourth Circuit, have held that a medical condition which threatens the ability to walk, whether through pain or actual physical inability, is a "serious medical need." *Skaggs v. Clark,* CIVIL ACTION No. 3:13-3293, at *14-16 (S.D.W. Va. Mar. 31, 2016) (citing *Taylor v. Plousis,* 101 F. Supp 2d 255, 262 (D.N.J. 2000); *Kaufman v. Carter*, 952 F.Supp. 520, 527 (W.D. Mich. 1996) ("A medical condition that threatens one's ability to walk, even if

ultimately reversible, is unquestionably a serious matter."); *Johnson v. Hardin Cty.,* 908 F.2d 1280, 1283-84 (6th Cir. 1990) (holding that defendant's refusal to provide inmate with crutches supported claim of deliberate indifference); *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) ("We do not doubt that the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances"); *LaFaut v. Smith*, 834 F.2d 389, 393-94 (4th Cir. 1987) (holding Eighth Amendment violated when prison delayed for eight months providing for basic needs of paraplegic prisoner, including ambulatory therapy); *Parzyck v. Prison Health Servs., Inc*., 290 F. App'x 289, 291 (11th Cir. 2008) (finding serious medical need where foot condition caused extreme pain that prevented prisoner from walking normally); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990) (painful broken foot constituted serious medical need); *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (holding injured leg that made it painful and virtually impossible to walk constituted serious medical need); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("broken foot constitutes an objectively serious medical condition"); *Petties v. Carter*, 795 F.3d 688, 693 (7th Cir. 2015), reh'g en banc granted, opinion vacated (Oct. 15, 2015) (Williams, J dissenting to panel decision) ("no dispute that [prisoner's] Achilles tendon rupture was objectively serious."); *Smith v. Goss,* No. 10- 01814, 2015 WL 1249871, at *3 (E.D. Cal. Mar. 18, 2015) R. & R. adopted sub nom., Smith v. Allison, No. 10-01814, 2015 WL

20

3466529 (E.D. Cal. June 1, 2015) (serious medical need pled where plaintiff had foot condition making it painful to walk without orthopedic shoes); *Gonzalez v. Bopari*, No. 12-1053, 2014 WL 6925750, at *3 (E.D. Cal. Dec. 9, 2014) (finding serious medical need pled where plaintiff was amputee whose ill-fitting prosthetic caused him to fall and prevented him from walking more than five feet); *Miller v. Rao*, No. 08-2469, 2013 WL 6240672, at *6 (W.D.N.Y. Dec. 3, 2013) (plaintiff's medical need for orthotics correction due to pain in hip and knee, aggravated by denial of previously-prescribed orthotic footwear, was serious medical need); *Giambalvo v. Sommer*, 2012 WL 4471532, at *5 (S.D.N.Y. Sep. 19, 2012) (finding prisoner's medical condition was serious because he required medical shoes to walk); *Mahoney v. Schweitzer*, 2010 WL 1707734, *1 (D. Mont. Jan. 26, 2012) (noting "knee injury affecting [p]laintiff's ability to walk may be a serious need," but dismissing complaint on deliberate indifference grounds); *Harris v. Hershey Med. Ctr.*, No. 08-843, 2009 WL 2762732, at *5 (M.D. Pa. Aug. 27, 2009) (finding serious medical need where chronic leg and back pain, for which plaintiff had been previously prescribed therapy and medication, caused plaintiff to walk with a cane); *Duarte v. Wong,* No. 05-01374, 2007 WL 2782940, at *4 (N.D. Cal. Sept. 24, 2007) (finding triable issue on whether fractured foot constituted serious medical need where physician ordered special shoe and prescribed pain medication, and where pain prevented plaintiff from bearing full weight on foot and significantly affected

ability to walk); *Ruffin v. Deperio*, 97 F. Supp. 2d 346, 352 (W.D.N.Y. 2000) (finding serious medical need when diabetic plaintiff's foot injury caused difficulty walking and severe constant pain).

Here, Mr. Nellson presented evidence that he had an inability to walk, repeatedly fell, and developed sores from crawling on the ground while in SHU. As stated in the Amended Complaint, Defendants approved the placement of or placed Mr. Nellson in the SHU, without a walker or a wheelchair, on two separate occasions. JA 152, ¶¶ 40-44. These decisions, as alleged in the Amended Complaint, were approved by Defendant Warden Coakley and Defendant SHU Lt. Soule. Defendants state that prisoners are placed in SHU without wheelchairs "absent compelling reasons." If this is the case, then the policy itself is violative; disabled individuals cannot simply be left on the floor for months as a "matter of policy." Further, having to drag himself around without a wheelchair for months, resulting in suppurating callouses, should qualify as a "compelling reason." Defendants' purported policy does not immunize them from their constitutional violations of Mr. Nellson's rights; indeed, it merely formalizes them. At the very least, Mr. Nellson has pled sufficient facts (which must be taken as true) to overcome a motion to dismiss and a motion for summary judgment on this point. Further, Defendants actions aside from the SHU confinement further evince deliberate indifference.

In late 2016, Mr. Nellson had a seizure. JA 152, ¶¶ 45-51. Rather than render aid, staff responded by further victimizing Mr. Nellson. *Id.* A witness of the events stated as follows, "A group of staff responded by entering the cell & hog tying Eddie. Wrist to ankles behind back and & strapping him (face down) on a hospital gurney. Staff continuously kept screaming at him about using drugs & overdosing. When Eddie came back out of medical he next day his face & body were covered in bruises & he had 3 broken ribs." JA 152, ¶ 46 (citing JA 209.)

On December 20, 2016, medical records indicate, "Inmate marginally able to ambulate with assist X2." JA 152, ¶ 47. Mr. Nellson could still not walk. Three days later, Defendant Bird reviewed Mr. Nellson's medical records, which included repeated findings that Mr. Nellson could not walk unassisted, was experiencing excruciating pain, and had been given at wheelchair only *at times*. JA 152, ¶ 48. Despite this, Defendant Bird failed to provide Mr. Nellson with pain medication, neurological medications, muscle relaxants, physical therapy, or an assistive device for ambulation. *Id.* As a result of this, Mr. Nellson fell numerous times, sustaining additional injuries. JA 152, ¶ 49. Further, Mr. Nellson's medical condition deteriorated to the point of being fatal. By December 2018, FCC Victorville asked to reclassify Mr. Nellson and, in that request, it wrote, "If untreated, the pressure on his spinal cord can lead to significant and permanent nerve damage including paralysis and death." JA 482.

23

In May 2017, Defendants placed Mr. Nellson in SHU without a walker for three months. JA 152, ¶ 54. All four Defendants observed Mr. Nellson's inability to walk and yet approved placing Mr. Nellson in SHU without a wheelchair. JA 152, ¶ 55. During his three months in the SHU, Mr. Nellson crawled on the floor, unable to ambulate. *Id.* at ¶ 56. He developed sores on his knees that bled and leaked pus because he was forced to crawl on the ground. *Id.* at ¶ 57. He also strained his back. *Id.* at ¶ 58. In August 2017, Mr. Nellson was dragged back to his cell.

In September 2017, one month later, Mr. Nellson was placed *back in SHU* by Defendants, without a wheelchair. *Id.* at ¶ 64. The Amended Complaint alleges that "this decision was directed, approved, and implemented by USP Hazelton Defendants." *Id.* at ¶ 65. For purposes of a motion to dismiss, Mr. Nellson's allegations must be taken as true. In fact, in this case, Defendants do not deny these events took place; they merely argue they were justified in doing so. That is plainly not a basis to prevail on a motion to dismiss.

In *McCants v. Berringer,* a prisoner sued because the defendants had provided him a defective wheelchair. *McCants v. Berringer*, 1:17CV935, at *9 (M.D.N.C. Aug. 8, 2018). The court in that case found such an action was deliberate indifference: "And, even if they did not subjectively know that the wheel would fall off, they knew or should have known that a wheelchair in disrepair could pose a risk of serious injury." *Id.* If an inmate falling off a defective chair is deliberate

24

indifference, the withdrawal of a chair altogether cannot be summarily dismissed as "appropriate."

The District Court, accordingly, incorrectly asserted that Mr. Nellson failed to meet the test for deliberate indifference.

## IV. The District Court improperly interpreted and applied West Virginia's MPLA.

The District Court held 1) that filing a Complaint prior to the filing of notice for medical malpractice claims warranted dismissal, rather than stay, and (2) that Mr. Nellson "failed to comply with W.Va. Code Section 55-7B-6(b), which required the notice to include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit," because Mr. Nellson merely "mailed a copy of the Complaint to defendants." *Id*. The District Court incorrectly applied the law on both counts.

### A. Post-litigation notice leads to stay, and not dismissal under the West Virginia Code.

The District Court stated that, "[t]his Court previously held that with W.Va. Code § 55-7B-6 is mandatory prior to filing suit in federal court, citing *Stanley v. United States,* 321 F.Supp.2d 805, 806–807 (N.D. W.Va. 2004) (Keeley, J.)." Order 15-18. On the basis of that case law, the District Court dismissed Mr. Nellson's medical malpractice claims. The District Court's reliance on its own 2004 decision

25

is in error; that decision is outdated and has since been overruled by subsequent West Virginia Supreme Court jurisprudence.

In 2012, the Northern District of West Virginia noted that four years earlier, in 2008, the West Virginia Supreme Court had ruled such defects as to filing requirements as being procedural and not substantive. *Giambalvo v. United States*, CIVIL ACTION No. 1:11CV14, at *13-15 (N.D.W. Va. Mar. 22, 2012). In 2008, the West Virginia Supreme Court held that noncompliance with pre-suit requirements are a procedural defect that does not warrant dismissal. *See Westmoreland v. Vaidya*, 664 S.E.2d 90, 96 (W. Va. 2008).

Noting that the two-fold intent of the MPLA is to prevent the filing of frivolous lawsuits and to promote the pre-suit resolution of non-frivolous medical malpractice claims, *Westmoreland* observed that "a principal consideration before a court reviewing a claim of insufficiency in a notice or certificate should be whether a party challenging or defending the sufficiency of a notice and certificate has demonstrated a good faith and reasonable effort to further the statutory purposes." *Id*. (quoting Westmoreland, 664 S.E.2d at 96) (internal quotation marks omitted). In that case, finding it significant that the plaintiff had proceeded in a good faith belief that he could litigate his case under the exception contained in subsection 6(c), Westmoreland concluded that the plaintiff's failure to file a certificate of merit was

a procedural error, and that he should be afforded a reasonable amount of time to fulfill the statutory pre-suit requirements prior to dismissal of his case. *Id.* at 96,97.

Four years later, this decision was approvingly cited by a West Virginia federal court, "West Virginia's highest court considered the statutory purposes of § 55-7B-6 and held that a plaintiff's noncompliance with the pre-suit requirements of § 55-7B-6(b) constituted a procedural defect **which did not warrant dismissal of his case.**" *Giambalvo*, CIVIL ACTION No. 1:11CV14, at *13-15.

Both in *Westmoreland* and in *Giambalvo* the plaintiff had demonstrated "a good faith and reasonable effort" to comply with the requirements of § 55-7B-6." Id. (internal citations omitted). In this case, Mr. Nellson retained an expert, obtained a Certificate of Merit, and mailed it to Defendants thirty (30) days before serving them with the Complaint. This is a good faith attempt to comply with West Virginia's statutory requirements and therefore does not warrant dismissal on this basis.

The District Court's holding is in contravention of West Virginia's Supreme Court interpretation of West Virginia state laws. As a result, it is an error and must be reversed.

27

**B. Mr. Nellson complied with the MPLA's substantive requirement of communicating theories of the case by mailing a copy of the Complaint along with his notice of litigation.**

The District Court's conclusion that Mr. Nellson failed to comply with W. Va. Code Section 55-7b-6(b) because he purportedly failed to transmit the theories of his case and his claims is flatly contradicted by the record.

W. Va. Code Section 55-7b-6(b) states that:

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include **a statement of the theory or theories of liability upon which a cause of action may be based**, and a **list of all health care providers and health care facilities to whom notices of claim are being sent**, together with a screening certificate of merit.

Here, the District Court stated that "summary dismissal is appropriate" because, "plaintiff provided no such statement to the defendants and rather just mailed a copy of the Complaint to the Defendants." JA 387 at 17. What is a Complaint, if not a statement of the theory or theories of liability upon which a cause of action may be based and a recitation of all Defendants to whom notice is being given? *See* FED. R. CIV. P. 8(a) ("A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleaders is entitled to relief"). The Complaint, notably, also listed each and every health care provider to whom the notices of claim were being sent, all Defendants, all relevant

28

facts, and the precise legal theory of the claims against them. *See generally* Complaint.

The District Court, in fact, did not list precisely in what way sending a copy of the Complaint would have been deficient under West Virginia law. *See* JA 387 at 17. However, if the District Court meant to imply that the statement of theories of liability had to be provided in some specific, self-identifying format, then such an assertion would be incorrect. In fact, a document may serve a dual purpose in this context—such as when a prison administrative grievance also met the standard to constitute a theory of liability sufficient to alert the defendant about the precise nature of the prisoner's claim. *Johnson v. United States,* 394 F.Supp.2d 854, 858 (S.D. W.Va. 2005).

Accordingly, and for all of the foregoing reasons, the District Court misapplied West Virginia law in finding that Mr. Nellson did not sufficiently provide notice to the Defendants and dismissing the claim for that reason.

## V.    Mr. Nellson's medical malpractice claims against Defendants Mims and Byrd were improperly dismissed.

The District Court dismissed Mr. Nellson's medical malpractice claims against Defendants Mims and Byrd because it found non-compliance with the FTCA. However, Mr. Nellson's claims should not have been dismissed because (1) the FTCA does not apply to *Bivens* claims against individual Defendants; (2) even if the FTCA applies, the US Government is the entity that has to make the decision

29

whether or not to substitute itself into the case; and (3) the District Court incorrectly determined that the Mr. Nellson did not comply with West Virginia law.

**A. The District Court erroneously re-fashioned Mr. Nellson's *Bivens* claims against individual Defendants into tort claims <u>only</u>, thereby impermissibly ignoring them as *Bivens* claims.**

As stated above, Mr. Nellsons alleged individual involvement by all Defendants when making *Bivens* claims for constitutional violations. *See supra*, Section II; JA 152, ¶¶ 122-127 (Counts I and II). The Supreme Court of the United States has already held that *Bivens* claims co-exist with the FTCA and neither is meant to supplant the other:

> [N]othing in the . . . [FTCA] or its legislative history . . . show[s] that Congress meant to pre-empt a *Bivens* remedy or to create an equally effective remedy for constitutional violations.

*Dunbar Corp. v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990) (quoting *Carlson v. Green,* 446 U.S. 14, 100 S. Ct. 1468 (1980)). In fact, the Supreme Court and the Fourth Circuit have held that the FTCA is *not* a protector of constitutional rights, "Plainly FTCA is not a sufficient protector of the citizens' constitutional rights, and without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy." *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990) (*Carlson v. Green,* 446 U.S. at 19-23, 100 S.Ct. at 1471-74). It is evident here where the District Court used the FTCA to dismiss Mr. Nellson's claims for constitutional violations; plainly, the FTCA is not protecting

Mr. Nellson and it should not apply to his *Bivens* claims against individual Defendants.

Under United States law, "[i]nmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA." *Lineberry v. Johnson*, Civil Action No. 5:17-04124, at *26 (S.D.W. Va. Aug. 10, 2018) (*Carlson*, 446 U.S. at 21 - 23; *Bush v. Lucas*, 462 U.S. 367, 378, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)(finding that a FTCA claim is not "a substitute for a *Bivens* action"). Similarly, when Commissioned Officers in the United States Health Service are sued for their work, they are sued under the FTCA. *See* JA 387 at 12. However, the FTCA expressly exempts constitutional claims from the FTCA's exclusiveness of remedy rule. *Id.* Yet, the District Court pushed Mr. Nellson's *Bivens* claims under the FTCA, by interpreting them as tort only claims and finding Defendants Mims and Bird subject to be officers of the U.S. Public Health Service. *Id.* Having thereby erased the *Bivens* nature of Mr. Nellson's medical malpractice claims, the District Court made the FTCA Mr. Nellson's exclusive remedy, and then dismissed his claims pursuant thereto. This was error and should be reversed. The FTCA does not apply to Mr. Nellson's *Bivens* claims against Defendants and therefore none of the District Court's analysis is dispositive of them.

It goes without saying that given the non-applicability of the FTCA to individual *Bivens* claims, the District Court also erred by dismissing Mr. Nellson's *Bivens* claims based on the FTCA's six-month statute of limitations. This ruling too was reversible error.

### B. The District Court incorrectly dismissed Mr. Nellson's claims under the FTCA rather than substituting the correct Defendant in the instant case.

Even assuming that the District Court was entitled to refashion the medical malpractice claims as something other than *Bivens* claims against individual Defendants (which it should not have done), a medical malpractice claim by a prisoner is cognizable under the Federal Tort Claims Act, even if a plaintiff does not mention the FTCA: "Although Plaintiff's Complaint does not mention the Federal Tort Claims Act, a claim for medical malpractice against the federal government and its agents necessarily arises under that act." *Poppell v. United States*, Civil Action No. RDB-10-03549, at *2 n.1 (D. Md. May 7, 2012) (citing 28 U.S.C. §§ 1346(b), 2401(b), 2671-80)).

It is true that a plaintiff may recover against the United States only to the extent that it has expressly waived sovereign immunity. *Sosebee v. Murphy*, 797 F.2d 179, 181 (4th Cir. 1986) (citing *Littlepaige v. United States*, 528 F. App'x 289, 7 (4th Cir. 2013); *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005); *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Congress waived the sovereign

32

immunity of the United States for certain torts committed by federal employees when it enacted the FTCA in 1946. *Id.* (citing *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The FTCA operates as a limited waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a government employee acting within the scope of his or her employment. *Id*. (citing *Stanley v. U.S.*, 321 F. Supp. 2d 805, 806 (N.D.W. Va. 2004*); Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)). The FTCA does not create new causes of action, but merely allows the United States to be sued and held liable in tort "in the same respect as a private person under the law of the place where the act occurred." *Id.* (citations omitted).

Specifically, the FTCA permits a tort suit against the United States if personal injury or death is "caused by the negligent or wrongful act or omission" of the government employee acting in the scope of his employment. 28 U.S.C. § 1346(b). Under 28 U.S.C. § 2671, "employee of the government" includes "persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation . . . ." Under 5 U.S.C. § 3374(c), a local government employee on detail to a federal agency is deemed an employee of the agency for purposes of the FTCA. *Ellis v. Ficano*, No. 94-1039, 1995 WL 764127, at *6 (6th Cir. Dec. 27, 1995).

Generally, the Attorney General defends any civil action brought against an employee of the Government. *Id*. § 2679(c). The Attorney General then certifies that the defendant employee was acting within the scope of his employment "at the time of the incident out of which the claim arose . . . ." *Id*. § 2679(d)(1). At that point, the civil action will be deemed an action against the United States, and the United States is substituted as a party defendant. *Id*. The Attorney General has delegated certification authority to the United States Attorneys under 28 C.F.R. §§ 15.3 and 15.4.

Accordingly, the District Court acted improperly in dismissing Mr. Nellson's claims under the FTCA. JA 387 at 18-20. Instead, the Court should have allowed the Government to proceed, decide whether it wanted to be substituted for the correct Defendant and allowed the case to proceed. Dismissing the claims against Defendants Mims and Byrd at this juncture was premature.

### C. As stated above, the District Court improperly found non-compliance with the W. Va. MPLA.

Moreover, the District Court claimed that such claims should be dismissed because "a plaintiff alleging medical negligence must comply with the West Virginia Medical Professional Liability Act ("MPLA"), W.Va. Code § 55-7B-1 et seq.," and the District Court determined that Mr. Nellson failed to do so. However, as detailed in Section III, *supra,* Mr. Nellson *was* compliant with the MPLA under prevailing and current case law. Therefore, dismissal under the FTCA is doubly improper

because 1) Mr. Nellson's *Bivens* claims premised on medical malpractice should not have been dismissed under the FTCA and 2) the District Court improperly interpreted and applied the MPLA.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L.R. 34(a), Mr. Nellson requests oral argument.

## CONCLUSION

For all of the points of error enumerated above, Mr. Nellson appeals the decision of the District Court in granting the Defendant's Motion to Dismiss and Motion for Summary Judgment, in its entirety, and requests that this Court reverse the decision of the lower court, re-instating Mr. Nellson's claims against all Defendants.

/s/ MARIO B. WILLIAMS
Mario B. Williams

**NDH LLC**
44 Broad Street NW, Suite 200
Atlanta, GA 30303
(404) 254-0442/(404) 935-9391 FAX
mwilliams@ndh-law.com

35

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. __21-6206__    **Caption:** __Nellson v. John Doe, et al.__

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.    Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger.  A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ___8,429___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
__Microsoft Words__ [*identify word processing program*] in
__Times New Roman,14-point__ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) __/s/ Mario B. Williams__

Party Name __Edward Nellson__

Dated: __4/5/2021__

11/14/2016  SCC