No. 21-6206

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

EDWARD NELLSON,

*Appellant-Appellant*,

v.

JOHN DOE, Warden of USP Hazelton; JOHN DOE, SHU Lt at USP Hazelton; GREGORY MIMS; LEIGH BIRD,

*Defendants-Appellees*.

On Appeal from the United States District Court
For the Northern District of West Virginia at Wheeling

## BRIEF FOR DEFENDANTS-APPELLEES

Christopher J. Prezioso
Maximillian F. Nogay
  *Assistant United States Attorneys*
Northern District of West Virginia
United States Attorney's Office
P.O. Box 591
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
(304) 234-0100 (telephone)
(304) 234-0112 (facsimile)

*Counsel for Defendants-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. iv

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES...................................................... 1

STATEMENT OF THE CASE AND FACTS .................................. 1

SUMMARY OF ARGUMENT ....................................................... 2

ARGUMENT ................................................................................. 13

   I. THE DISTRICT COURT DID NOT ERR IN ENTERING
      SUMMARY JUDGMENT ON APPELLANT'S
      DELIBERATE-INDIFFERENCE CLAIMS.......................... 13

      A. Standard of Review ......................................................... 13

      B. The district court properly concluded that the Defendants-
         Appellees did not act with deliberate indifference to
         Appellant's purported serious medical needs.................... 13

      C. Warden John Doe of USP Hazelton and SHU Lt. John Doe
         at USP Hazelton lacked the requisite personal involvement
         necessary to sustain a Bivens action................................. 17

      D. Defendants-Appellees are entitled to qualified immunity ................ 20

  II. APPELLANT'S MEDICAL NEGLIGENCE CLAIMS WERE
      PROPERLY DISMISSED BY THE DISTRICT COURT
      BECAUSE HE FAILED TO COMPLY WEST VIRGINIA
      CODE § 55-7B-6 ............................................................... 21

      A. Standard of Review ......................................................... 21

      B. In West Virginia, litigants must serve a notice of claim and a
         screening certificate of merit on each defendant-health care
         provider before filing a civil action for medical negligence ............ 21

C.  Appellant, through his counsel, did not make a good faith
    effort to comply with W. Va. Code § 55-7B-6 prior to filing
    suit ........................................................................................ 23

III.  APPELLANT'S MEDICAL NEGLIGENCE CLAIMS ARE
      BARRED BY THE APPLICABLE STATUTE OF
      LIMITATIONS......................................................................... 27

CONCLUSION ............................................................................. 28

STATEMENT REGARDING ORAL ARGUMENT ...................................... 30

CERTIFICATE OF COMPLIANCE ............................................................. 31

# TABLE OF AUTHORITIES

**Cases**

*Bivens v. Six Unknown Federal Narcotics Agents*,
    403 U.S. 388 (1971) ............................................................... passim

*Braxton v. Tygart Valley Reg'l Jail*,
    2020 U.S. Dist. LEXIS 187852 (N.D.W. Va. Feb. 13, 2020) ............. 25

*Butler v. Drive Auto. Indus. of Am., Inc.*,
    793 F.3d 404 (4th Cir. 2015) ............................................... 13

*Danser v. Stansberry*,
    772 F.3d 340 (4th Cir. 2014) ......................................... 20, 21

*Davison v. Sinai Hosp. of Baltimore, Inc.*,
    462 F. Supp. 778 (D. Md. 1978) ........................................ 23

*Davison v. Sinai Hosp. of Baltimore, Inc.*,
    617 F.2d 361 (4th Cir. 1980) ............................................. 23

*Drennen v. United States*,
    375 F. App'x 299 (4th Cir. 2010) ....................................... 22

*Estelle v. Gamble*,
    429 U.S. 97 (1976) ............................................... 13, 14, 16

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................. 13, 14

*Giambalvo v. United States*,
    2012 U.S. Dist. LEXIS 38925 (N. D. W. Va. Mar. 22, 2012) ............. 24, 25

*Grayson v. Peed*,
    195 F.3d 692 (4th Cir. 1999) ............................................. 16

*Haines v. Kerner*,
    404 U.S. 519 (1972) ......................................................... 25

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) ............................................................. 13

*Hinchman v. Gillette*,
   217 W. Va. 378, 618 S.E.2d 387 (2005) ............................................ 22

*Hunter v. Bryant*,
   502 U.S. 224 (1991) .......................................................................... 20

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014) ........................................... 13, 14, 16, 21

*King v. Rubenstein*,
   825 F.3d 206 (4th Cir. 2016) ............................................................ 18

*Lucas v. United States*,
   664 F. App'x 333 (4th Cir. 2016) ..................................................... 23

*Lancaster v. USP Hazelton*,
   742 F. App'x 724 (4th Cir. 2018) ..................................................... 23

*Love-Lane v. Martin*,
   355 F.3d 766 (4th Cir. 2004) ............................................................ 17

*Miltier v. Beorn*,
   896 F.2d 848 (4th Cir. 1990) ...................................................... 18, 19

*Medina v. United States*,
   259 F.3d 220 (4th Cir. 2001) ............................................................ 21

*Ousley v. McDonald*,
   648 F. App'x 346 (4th Cir. 2016) ..................................................... 13

*Pearson v. Callahan*,
   555 U.S. 223 (2009) .......................................................................... 20

*Raplee v. United States*,
   842 F.3d 3281 (4th Cir. 2016) .......................................................... 23

*Saucier v. Katz*,
    533 U.S. 194 (2001) ................................................................... 20

*State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*,
    242 W. Va. 335, 835 S.E.2d 579 (2019) ............................................... 23

*Trulock v. Freeh*,
    275 F.3d 391 (4th Cir. 2001) ............................................................. 17

*United States v. Clawson*,
    650 F.3d 530 (4th Cir. 2011) ............................................................. 16

*Westmoreland v. Vaidya*,
    222 W. Va. 205, 664 S.E.2d 90 (W. Va. 2008) .................................. 24, 25

*Wright v. Collins*,
    766 F.2d 841 (4th Cir. 1985) ............................................................. 16

*Zander v. United States*,
    494 F. App'x 386 (4th Cir. 2012) ....................................................... 27

**Statutes**

8 U. S. C. § 2674 ................................................................................. 21

28 C. F. R. § 14.2 ............................................................................... 27

28 C. F. R. § 14.9 ......................................................................... 10, 27

28 U. S. C. § 2401 ......................................................................... 27, 28

28 U. S. C. § 2671 ............................................................................... 21

28 U. S. C. § 2675 ............................................................................... 27

W. Va. Code § 55-7B-6 ................................................................. passim

## JURISDICTIONAL STATEMENT

The appellees stipulate to the appellant's jurisdictional statement.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in determining that Defendants-Appellees' actions or inactions did not amount to deliberate indifference to Appellant's purported serious medical needs.

2.    Whether the district court erred in requiring Appellant to comply with West Virginia Code § 55-7B-6 prior to commencing a medical negligence claim against Defendants-Appellees Mims and Bird pursuant to the Federal Tort Claims Act.

3.    Whether Appellant's medical negligence claim(s) against Defendants-Appellees Mims and Bird are barred by the applicable statute of limitations.

## STATEMENT OF THE CASE AND FACTS

Plaintiff-Appellant, Edward Nellson, Federal Register Number 31408-007, is a Federal inmate presently housed at the United States Penitentiary ("USP") in Florence, Colorado.  Previously, Appellant was designated to Federal Correctional Complex ("FCC") Hazelton in Bruceton Mills, West Virginia, where the allegations in the Amended Complaint relevant to the above-named Defendants-Appellees occurred. On March 22, 2020, Appellant filed his initial Complaint in the U. S. District Court for the District of Columbia pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  *See* JA 12-70.

This initial Complaint was transferred from the District of Columbia to the U. S. District Court for the Eastern District of Kentucky.[1] Upon Appellant's Motion to Sever and Transfer Venue, the claims asserted in the initial Complaint against Defendants-Appellees "Warden John Doe of USP Hazelton," "SHU Lt. John Doe at USP Hazelton," Gregory Mims, and Leigh Bird were severed and transferred to the U. S. District Court for the Northern District of West Virginia.[2] Each of the above-named Defendants-Appellees are either current or former employees of the Federal Bureau of Prisons ("BOP") and the claims brought against these Defendants-Appellees are brought in their individual capacities.

## **Conviction and Sentence**

On January 14, 2005, Appellant was sentenced in the District of Columbia Superior Court to serve a life sentence for conspiracy to commit robbery, first degree burglary while armed, armed robbery, murder I while armed, and carrying a dangerous weapon. *See* JA 114 at ¶ 5. Appellant was designated to the FCC Hazelton from December 12, 2016 to November 13, 2017. *See Id*. at ¶ 6. For a portion of the allegations asserted in the Amended Complaint related to the medical treatment he

---

[1] The claims against Defendants Gary Petry and Theresa Stenmark were severed and transferred to the United States District Court for the Western District of Oklahoma. *See Nellson v. Gary Petry*, Case No. CIV-20-562-F (W.D. Okla.). The claims against Defendants Diane Sommer, Philip Hlavac, and Walters were severed and transferred to the United States District Court for the Middle District of Pennsylvania. *See Nellson v. United States Federal Bureau of Prisons, et al.,* Case No. 3:20-CV-0963 (M.D. Pa.). The federal defendants in both cases have filed dispositive motions which are currently pending.

[2] Upon information and belief, former USP Hazelton Warden Joseph Coakley is identified as "Defendant Warden John Doe of USP Hazelton," and SHU Lieutenant James Soule is identified as "Defendant SHU Lieutenant John Doe."

received at FCC Hazelton, Appellant was housed in the Special Housing Unit ("SHU"). *Id*.

While in the SHU, Appellant would have been afforded the same opportunity as those in general population to request and be seen by Health Services for medical care. *See* JA 508 at ¶ 5. Inmates are typically not permitted to keep mobility devices in their cell in the SHU, except in limited circumstances, due to safety and security concerns. *See Id*. at ¶ 6. If Appellant was required to leave his SHU cell for any reason, he would have been escorted and assisted by staff. *See Id*. at ¶ 4.

## Chronology of Medical Treatment

On December 22, 2016, Appellant presented to Health Services at FCC Hazelton for his Admissions and Orientation ("A&O") appointment. *See Id*. at ¶ 6. During the A&O appointment, Appellant mentioned that he had fallen out of his bunk at a prior facility and made claims that he was not properly medically assessed and improperly treated. *See Id*. at ¶ 6. Appellant stated he was diagnosed with "Balance Equilibrium Disorder" secondary to his injury and noted that he could not walk unsupported and presented with a walker. *See Id*. at ¶ 6. After that encounter, Defendant-Appellant Leigh Bird, PA-C ("Bird") spent more than an hour going through Appellant's medical chart and compiled a timeline of the events that occurred/were documented in BEMR (BOP's medical record system) since the fall. *See Id*. at ¶ 6.

Based on Bird's review of Appellant's medical chart, Bird could not find any indication Appellant was diagnosed with "Balance Equilibrium Disorder." *See Id*. at ¶ 7. Appellant's neurology findings appeared "essentially normal" and "not worrisome" to Bird, and Bird's review did not reveal any objective findings to support the need of an assistive device for ambulation. *See* JA 508-509 at ¶ 7. As such, Bird spoke with Defendant-Appellee Gregory Mims, M.D. ("Mims") and the Chief Psychologist regarding psychological testing. *See Id*.

On December 29, 2016, Health Services was called to evaluate Appellant in his cell after reports that he was "repeatedly beating his head on the wall, rolling on the floor and drinking water from the toilet." *See* JA 509 at ¶ 8. Appellant was described as "manic" during the assessment and unable to remain still while uttering several broken sentences. *See Id*. Staff noted a superficial laceration to the left underside of Appellant's tongue, consistent with a bite. *See Id*. Staff also noted that Appellant had been diagnosed with dissociative and conversion disorder, as well as antisocial personality disorder. *See Id*. Appellant refused to verbalize understanding and continued to rant in broken sentences. *See Id*.

The following day, Appellant was seen at Health Services for a neurology visit. *See Id*. at ¶ 9. Appellant had a sparse recollection of the events but reported that he fell and hit his head the night prior and thinks he had a seizure. *See Id*. Staff observed flailing actions and bizarre behavior from Appellant during the visit and

submitted a request for a neurology consultation and an EEG due to Appellant's episode on December 29, 2016 with seizure like activity. *Id*.

Appellant underwent an EEG on April 11, 2017, and Health Services staff noted confirmed the suspected seizure activity on April 26, 2017. *See Id*. at ¶10-11. Appellant was also noted as not compliant with taking his prescribed Dilantin, a prescription medicine used to treat certain types of seizures, with his last retrieval from Health Services being in January 2017. *See Id*. On May 10, 2017, Bird saw Appellant at Health Services in order to discuss the April 11, 2017 EEG results. *See* JA 510 at ¶ 12. Appellant reported not taking the Dilantin because he did not think he was actually having seizures. *See Id*. Nonetheless, Bird renewed Appellant's Phenytoin (the generic form of Dilantin) order and requested a neurology consultation and further evaluation for Appellant. *See Id*.

On May 16, 2017, Appellant was enrolled in the Neurology Chronic Care Clinic and was seen in that Clinic on September 8, 2017. *See Id*. at ¶ 13-14. During that visit, Appellant reported that his last seizure was in July 2017, noted intermittent spasms of his hand, and reported not taking the Dilantin due its potential side effects. *See Id*. at ¶ 14. Appellant was able to stand but was unsteady without support, so he was ambulating with the use of a wheeled walker. *See Id*. Appellant was advised of his and pending consultation with neurology and, again, advised to comply with his medication. *See Id*.

On October 12, 2017, Appellant was seen by a Neurologist at the West Virginia University ("WVU") Department of Neurology. *See Id*. at ¶ 15. The treating Neurologist noted that Appellant was unable to stand on his own and needed assistance or a walker. *See Id*. Appellant was subsequently diagnosed with epilepsy and recommended to undergo an MRI and physical therapy to address his gait instability. *See Id*. The Neurologist recommended Appellant follow-up in 3-4 months. *See Id*. One week later, an MRI request was submitted with a target date of February 21, 2018, and Appellant's medication was adjusted according to the Neurologist's recommendations. *See Id*. at ¶ 16.

Prior to Appellant's transfer from FCC Hazelton, Defendant-Appellee Mims discussed Appellant's medical case and continuity of care with the Clinical Director at the receiving institution on November 7, 2017. *See* JA 511 at ¶ 11. The receiving institution's Clinical Director was willing to accept Appellant, continue his medical care, and follow-up for his brain MRI and neurological treatment in March 2018. *See Id*.

## Administrative Remedies

On April 20, 2017, the Mid-Atlantic Regional Office of the BOP received Administrative Remedy No. 899096-R1 filed by Appellant. *See* JA 255. This administrative remedy claim was rejected (REJ) on April 20, 2017, for status reason (INS RSR), meaning Appellant's request first needed to be filed with the institution

for the Warden's review and that he could resubmit his appeal in proper format within ten (10) days of the date of the rejection notice. See *Id*. Appellant subsequently filed Administrative Remedy No. 928154 with his correctional institution, the Regional Office, and the Central Office which was denied with explanation (XPL) on June 18, 2018. *See Id*. Appellant subsequently filed Administrative Remedy No. 928155 with his correctional institution, the Regional Office, and the Central Office which was denied with explanation (XPL) on June 26, 2018. *See Id*.

## **Procedural History**

On March 22, 2020, Appellant filed a Complaint in the United States District Court for the District of Columbia. *See* JA 12-70. Through this Complaint, Appellant asserted claims against individual defendants at four (4) separate Federal Bureau of Prisons facilities where he had been housed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See* JA 59-60. On May 7, 2020, Appellant's Complaint was transferred to the United States District Court for the Eastern District of Kentucky. *See* JA 71-76. On June 5, 2020, Appellant filed a Motion to Sever and Transfer Venue, and on June 12, 2020, the claims asserted in the underlying Complaint against Defendants-Appellees "Warden John Doe of USP Hazelton," "SHU Lt. John Doe at USP Hazelton," Gregory Mims, and Leigh Bird

were severed and transferred to the United States District Court for the Northern District of West Virginia. *See* JA 77; 84.

On September 10, 2020, undersigned counsel for Defendants-Appellees filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment and Memorandum in support thereof. *See* JA 87-111. On September 14, 2020, the district court entered an Order and Roseboro Notice[3] directing Appellant to respond to Defendants' pending Motion to Dismiss or, in the alternative, Motion for Summary Judgment within twenty-one (21) days. Subsequently, on September 15, 2020, the Court entered an Order for Appellant's counsel to show cause within ten (10) days why he/she should not be removed as counsel of record for failing to respond to the Verification of Attorney Admission within the prescribed timeline.

On September 24, 2020, Appellant filed an Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B), thereby causing Appellees-Defendants' previously filed Motion to Dismiss or, in the alternative, Motion for Summary Judgment to be moot and requiring Defendants-Appellees to file another responsive pleading to the Amended Complaint on or before October 8, 2020. *See* JA 152-185. In Count I, Appellant alleges *Bivens* claims against "all Defendants in their individual capacity," including Defendants-Appellees Warden Joseph Coakley, identified as "Warden

---

[3] Appellant's counsel had not submitted a completed Certification of Eligibility for Admission or filed a motion to appear pro hac vice within ten (10) days of June 15, 2020, as order by the Court. On September 23, 2020, local counsel entered an appearance on behalf of Appellant and subsequently filed numerous Applications for Admission Pro Hac Vice on behalf of additional counsel.

John Doe of USP Hazelton," SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," Gregory Mims, and Leigh Bird. *See* JA 180. It Count II, Appellant alleges a *Bivens* claim against Defendants-Appellees Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," and Gregory Mims in their individual capacity but also in their supervisory capacity. *See Id*. It Counts III, IV and V, Appellant alleges duplicitous medical negligence claims against Gregory Mims and Leigh Bird for "negligence," "gross negligence," and "willful and wanton" medical care. *See* JA 181-183.

On October 6, 2020, Defendants-Appellees file a second Motion to Dismiss or, in the alternative, Motion for Summary Judgment as to Appellant's Amended Complaint. *See* JA 246-272. Thereafter, Appellant filed three motions, including a Motion for Discovery which was denied. *See* JA 273. Appellant responded to Defendants-Appellees' dispositive motion on November 11, 2020, and a Reply was filed on November 23, 2020. *See* JA 327-386.

## The District Court's Judgment

On January 22, 2021, the district court entered judgment in favor of the Defendants-Appellees thereby dismissing Appellant' Amended Complaint in its entirety. *See* JA 387-408. As to Counts I and II, the district court wrote that Appellant failed to allege the requisite level of personal involvement of Warden John Doe of

USP Hazelton and SHU Lt. John Doe at USP Hazelton. *See* JA 396-397. The district court also made a finding that Appellant failed to prove both the objective and subjective prong of the Eighth Amendment analysis. *See* JA 399.

As to the medical negligence claims in Counts III, IV and V, the district court found that those claims must be dismissed for multiple reasons. *See* JA 401-406. Most glaringly, the district court found that Appellant failed to comply with W. Va. Code § 55-7B-6 which imposes certain requirements on litigants prior to commencing suit against a health care provider. *See* JA 401-402. Appellant failed to serve Defendants-Appellees Gregory Mims and Leigh Bird with a notice of claim or screening certificate of merit at least thirty (30) days prior to filing suit. *See* JA 403. Appellant, instead, filed suit and then mailed a copy of the lawsuit to the parties. *See Id*. Finally, the district court found that Appellant's tort claims against Defendants-Appellees Mims and Bird are barred by the statute of limitations provided in 28 C. F. R. § 14.9 since Appellant did not commence suit within six (6) months of the denial of his administrative tort claim. *See* JA 405.

### This Appeal

On February 9, 2021, Appellant filed a Notice of Appeal as to "all Orders, including, but not limited to, the Order regarding Defendants' Motions to Dismiss Appellant's Amended Complaint Or, In the Alternative, Motion for Summary Judgment." *See* JA 409. However, Appellant's brief clarifies that he is only

appealing "the decision of the District Court in granting the Defendant's Motion to Dismiss and Motion for Summary Judgment." *See* Br. at 35.

## SUMMARY OF ARGUMENT

This appeal raises three issues for this Court's consideration. The first is whether the district court erred in finding that Defendants-Appellees' actions or inactions did not amount to deliberate indifference to Appellant's purported serious medical needs. Analyzing the district court's judgment under an abuse of discretion or de novo standard of review – both of which are implicated – leads to the same outcome in this appeal. The district court properly concluded that the Defendants-Appellees did not act with deliberate indifference to Appellant's purported serious medical needs.

Under this Court's jurisprudence, conduct amounting to "deliberate indifference" is a very high standard, and the record clearly shows that, while Appellant was at Federal Correctional Complex Hazelton from December 12, 2016 to November 13, 2017, he was appropriately and timely treated for all medical issues he presented, which makes this case about a disagreement over diagnosis and treatment. The constitutional claims against Defendants-Appellees Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and Defendant-Appellee SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," cannot proceed, since both individuals lacked the requisite personal

involvement in Appellant's medical care or treatment, and there is no *respondeat superior* liability in a *Bivens* suit.

The second and third issues before this Court concern West Virginia Code § 55-7B-6 and its pre-suit notice requirements in medical negligence cases brought pursuant to the Federal Tort Claims Act. The district court properly dismissed the tort claims contained in Appellant's Amended Complaint for failing to serve a notice of claim and certificate of merit thirty (30) days prior to commencing a medical negligence claim against Defendants-Appellees Mims and Bird. Appellant's lackadaisical attempt to "comply" with W. Va. Code § 55-7B-6 cannot be considered a "good faith" attempt under prevailing West Virginia case law. Therefore, the district court's judgment dismissing Appellant's tort claims should be affirmed.

Lastly, and perhaps most importantly, Appellant's medical negligence claims against Defendants-Appellees Mims and Bird are barred by the applicable statute of limitations. Appellant's administrative tort claim was denied by letter dated March 21, 2019, and Appellant was specifically notified that if he was not satisfied with the BOP's determination, he may file suit within six (6) months after the date of the letter in the appropriate district court. However, Appellant did not file his initial complaint in this matter until March 22, 2020 – over one (1) year after the denial.

No further discovery is warranted in this case. The medical records speak for themselves and vindicate the district court's judgment, which should be affirmed.

## ARGUMENT

### I. THE DISTRICT COURT DID NOT ERR IN ENTERING SUMMARY JUDGMENT ON APPELLANT'S DELIBERATE-INDIFFERENCE CLAIMS

#### A. Standard of Review

The Court reviews a district court's decision to grant summary judgment without discovery for abuse of discretion. *See Ousley v. McDonald*, 648 F. App'x 346, 348 (4th Cir. 2016) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). The Court next reviews the merits of the district court's grant of summary judgment de novo. *See Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 407 (4th Cir. 2015).

#### B. The district court properly concluded that the Defendants-Appellees did not act with deliberate indifference to Appellant's purported serious medical needs.

Appellant cannot show that the Defendants-Appellees acted with deliberate indifference to his purported serious medical needs. To establish an Eighth Amendment violation for cruel and unusual punishment based on the treatment of a prisoner's medical condition, Appellant must show that prison officials acted, or did not act, with "deliberate indifference" to the inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Deliberate indifference to an inmate's serious medical needs by a prison

official is a subjective standard and will only arise if an official "knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178 (citing *Estelle*, 429 U.S. at 106); *see also Farmer*, 511 U.S. at 839-40 (adopting "subjective recklessness as used in the criminal law…as the test for 'deliberate indifference' under the Eighth Amendment").

As detailed above, Appellant was housed at the FCC Hazelton from December 12, 2016 to November 13, 2017. Contrary to Appellant's allegations, during his less than one-year at FCC Hazelton, Appellant was appropriately and timely treated for all medical issues he presented. A review of Appellant's medical records establishes the same. *See* JA 515-695. On December 22, 2016, shortly after Appellant's arrival to FCC Hazelton, Appellant participated in an A&O appointment, wherein his medical history was reviewed at length. *See* JA 568-569. After exhaustively reviewing Appellant's medical chart and compiling a timeline of the events that occurred, Defendant-Appellee Bird found no evidence that Appellant had previously been diagnosed with "Balance Equilibrium Disorder," as represented by Appellant. *See Id*.

On December 29, 2016, Appellant was seen by Health Services after reporting he had a seizure and hit his head. *See* JA 561-562. The next day, Appellant had a Neurology visit with Health Services, and a neurology consultation request was submitted, with a request for an EEG, due to Appellant's episode on December 29, 2016. *See Id.* Appellant underwent an EEG on April 11, 2017 and the suspected seizure activity was confirmed.[4] *See* JA 675-676.

On May 16, 2017, Appellant was enrolled in the Neurology Chronic Care Clinic. *See* JA 510. On October 12, 2017, Appellant was seen by an outside Neurologist at the WVU Department of Neurology. *See Id.* Appellant was diagnosed with epilepsy and recommend an MRI and physical therapy following the MRI to address Appellant's gait instability. The Neurologist recommended follow-up in 3-4 months. *See Id.* After Appellant's visit with the Neurologist, Defendant-Appellee Bird submitted a request for an MRI with a target date of February 21, 2018 based on the Neurologist's recommendations. *See Id.*

On November 7, 2017, Defendant Mims, Clinical Director at FCC Hazelton, discussed Appellant's case and continuity of care with the Clinical Director at the receiving institution prior to Appellant's transfer from FCC Hazelton. *See* JA 511.

---

[4] During the April 11, 2017 examination, it was noted that Appellant was not compliant with taking his prescribed medication, Dilantin. On May 10, 2017, Appellant confirmed he was not taking his prescribed medication. Further, Appellant reported not taking the Dilantin because he did not think he was actually having seizures. Appellant's Dilantin was renewed and a Neurology consultant request was submitted for Appellant to undergo further evaluation. *See* JA 510.

The receiving institution's Clinical Director was willing to accept Appellant, continue his care and follow-up for his brain MRI and Neurology in March 2018. *See Id*.

Deliberate indifference is "a very high standard" because, "the Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). Because Appellant alleges the Defendants-Appellees personally violated the constitutional prohibition against cruel and unusual punishment inherent in the Eighth Amendment to the United States Constitution, Appellant must meet a more demanding standard and prove that there was were deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 104.

The Fourth Circuit has consistently held that disagreements between an inmate and prison personnel over diagnosis or course of treatment are not cognizable claims under the Eight Amendment and fall short of showing deliberate indifference. *See Jackson*, 775 F.3d at 178; *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). To the extent Appellant alleges he was denied access to a wheelchair or a walker in the SHU, Defendant-Appellee Mims clearly explains that, absent compelling reasons, inmates are generally not permitted to keep mobility devices in their SHU cell due to safety and

security concerns.[5] *See* JA 508.

The record shows that, while Appellant was at FCC Hazelton, he was appropriately and timely treated for all medical issues he presented, which makes this case about a disagreement over diagnosis and treatment. Accordingly, the judgment of the district court should be affirmed.

### C.     Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton lacked the requisite personal involvement necessary to sustain a *Bivens* action.

The district court correctly concluded that Appellant's Amended Complaint failed to allege *any* personal involvement on the part of Defendant-Appellee Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and Defendant-Appellee SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton." *See* JA 397-398. There is no respondeat superior liability in a Bivens suit or under § 1983, as is the case here at Count II. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Rather, liability in a *Bivens* action is "personal, based upon each defendant's own constitutional violations." *Trulock*, 275 F.3d at 402.

This Circuit has held that non-medical supervisory personnel, like a warden,

---

[5] Appellant filed a similar *Bivens* lawsuit in the U. S. District Court for the Eastern District of Kentucky against officials at USP Big Sandy. *See* Case No. 7:16-CV-80 (E.D. Ky.). Appellant alleged that, while at the Federal Transfer Center in Oklahoma, he fell out of his bunk and injured his head. *See Id*., ECF No. 1. He further alleged that prison medical staff at USP Big Sandy failed to treat him, removed his wheelchair, and retaliated against him. *See Id*. The district court ultimately agreed with the Defendants and dismissed Appellant's Complaint in its entirety. *See* ECF No. 50.

may rely on the opinion of the medical staff regarding the proper medical treatment of inmates. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *see also King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016). Accordingly, here, Defendant-Appellee Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and Defendant-Appellee SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," did not substitute their own medical judgment for that of medical professionals, such as Defendants-Appellees Mims and Bird. *See* JA 396.

Here, Appellant brings two causes of action against these Defendants-Appellees. Count I, in essence, is an allegation that Warden Joseph Coakley, identified as "Warden John Doe of USP Hazelton," and SHU Lieutenant James Soule, identified as "SHU Lt. John Doe at USP Hazelton," both non-medical prison officials, failed to provide adequate medical care to Appellant. *See* JA 180. During his less than one-year designation to FCC Hazelton, Appellant was appropriately and timely treated for all medical issues he presented, as well as treated by a specialist outside of Health Services. *See* JA 508-511 at ¶ 6-17. The medical care Appellant received, or did not receive, was at the direction of Defendants-Appellees Mims and Bird for which Warden Coakley and SHU Lt. Soule cannot be held liable.

Count II alleges a "Supervisory Capacity" claim against these Defendants, as evidenced by the language: "COUNT II BIVENS CLAIM: SUPERVISORY

CAPACITY." *See* JA 180. That cause of action is insufficiently pled as a matter of law and warrants dismissal. Defendants-Appellees Warden Coakley, identified as "Warden John Doe of USP Hazelton," and SHU Lieutenant Soule, identified as "SHU Lt. John Doe at USP Hazelton," cannot be held liable to Appellant under a theory of supervisory liability. The Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the Appellant shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *See Miltier*, 896 F.2d at 854.

The *Militier* Court explained that a plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *See Id*. Rather, the Appellant must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *See Id*. The plain language of the Amended Complaint concedes that Appellant's Count II against Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton is one for Supervisory Capacity. *See* JA 180.

The facts as alleged by Appellant clearly cannot show that Warden John Doe of USP Hazelton and SHU Lt. John Doe at USP Hazelton corrective inaction

amounts to deliberate indifference or tacit authorization of the offensive practice alleged against Defendants-Appellees Mims and Bird. Accordingly, the district court granted summary judgment Counts I and II in favor of Defendants-Appellees. For the foregoing reasons, that judgment should be affirmed.[6]

### D.     Defendants-Appellees are entitled to qualified immunity.

Each of the Defendants-Appellees are entitled to qualified immunity. This immunity is an affirmative defense for the lawsuit rather than a mere defense to liability, so there is an "importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Determinations of qualified immunity follow a two-step inquiry. In the first step, "a court first must decide whether the undisputed facts show that the government official's actions violated the plaintiff's constitutional rights." *Danser v. Stansberry*, 772 F.3d 340, 345-46 (4th Cir. 2014) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the plaintiff establishes a violation of that constitutional right, the second part of the inquiry requires a court to "determine whether the right at issue was 'clearly established' at the time of the events in question." *Danser*, 772 F.3d at 346 (citing *Saucier*, 533 U.S. at 201; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

---

[6] Subsequent to this Appeal, counsel for Defendants-Appellees learned that Clinical Director Gregory Mims and Leigh Bird, PA-C were not commissioned officers of the Public Health Service at the time Appellant was designated to USP Hazelton. It is of no matter to this Appeal, since neither Mims nor Bird acted deliberately indifferent to Appellant's purported serious medical need(s).

As discussed above, Appellant cannot maintain his Eighth Amendment claims because he cannot establish that the Appellees-Defendants had the requisite state of mind of deliberate indifference to Appellant's health or safety. Therefore, each of the Appellees-Defendants are entitled to summary judgment based on the first prong of the qualified immunity test. *See Danser*, 772 F.3d at 349-50.

## II. APPELLANT'S MEDICAL NEGLIGENCE CLAIMS WERE PROPERLY DISMISSED BY THE DISTRICT COURT BECAUSE HE FAILED TO COMPLY WEST VIRGINIA CODE § 55-7B-6

### A. Standard of Review

The Court reviews de novo the dismissal of a complaint under Rule 12(b)(6). *See Jackson*, 775 F.3d at 177-78.

### B. In West Virginia, litigants must serve a notice of claim and a screening certificate of merit on each defendant-health care provider before filing a civil action for medical negligence.

The Federal Tort Claims Act, 28 U. S. C. §§ 2671, *et. seq.*, contains its own choice of law provision and requires that the applicable law come from the state where the alleged negligence occurred. In federal torts cases, the United States shall be liable in the same manner and to the same extent as a private individual under like circumstances. *See* 8 U. S. C. § 2674; *see also Medina v. United States,* 259 F.3d 220, 223 (4th Cir. 2001). Therefore, West Virginia law governs this action, and the

Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, *et. seq.*, controls medical malpractice claims in West Virginia.

The MPLA provides that, thirty days before filing a complaint, a claimant must:

> serve by certified mail…a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit.

*Drennen v. United States*, 375 F. App'x 299, 302 (4th Cir. 2010) (quoting W. Va. Code § 55–7B–6(b)). The statutory purposes of the pre-suit notice requirements are to "[prevent] the making and filing of frivolous medical malpractice claims and lawsuits; and promoting the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 217 W. Va. 378, 386, 618 S.E.2d 387, 395 (2005).

Further, the statute vests certain substantive rights in the prospective defendant-health care provider. Upon receipt of the notice of claim and the screening certificate of merit, the health care provider is entitled to pre-litigation mediation before a qualified mediator upon written demand to the claimant. *See* W. Va. Code § 55-7B-6(f). The health care provider may also "challenge the legal sufficiency of a plaintiff's pre-suit notice of claim or screening certificate of merit" by providing the claimant with written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies. *See Hinchman*, 217 W. Va. at 386.

Appellant provides no authority to support his claim that he is not required to comply with W. Va. Code § 55-7B-6 because none exists. Historically, however, this Court has enforced the West Virginia statutory pre-suit notice requirements, as well as the similar pre-suit notice requirements in Maryland. *See,* e.g., *Lancaster v. USP Hazelton*, 742 F. App'x 724, 725 (4th Cir. 2018) (unpublished); *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016); *Lucas v. United States*, 664 F. App'x 333, 335 (4th Cir. 2016) (unpublished); *Davison v. Sinai Hosp. of Baltimore, Inc.*, 462 F. Supp. 778, 780 (D. Md. 1978), aff'd, 617 F.2d 361 (4th Cir. 1980). Appellant's argument that "[p]ost-litigation notice leads to stay, and not dismissal under the West Virginia Code" is legally and factually incorrect. *See* Br. at 25. The Supreme Court of Appeal of West Virginia has expressly held that "a [trial] court has no authority to suspend the West Virginia Medical Professional Liability Act's pre-suit notice requirements and allow a claimant to serve notice after the claimant has filed suit. To do so would amount to a judicial repeal of W. Va. Code § 55-7B-6 [2003]." *See State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 338, 835 S.E.2d 579, 582 (2019).

For the foregoing reasons, the judgment of the district court should be affirmed.

## C.     Appellant, through his counsel, did not make a good faith effort to comply with W. Va. Code § 55-7B-6 prior to filing suit.

Appellant was represented by counsel at the time the complaint was filed and

should not be afforded the leniency typically afforded to *pro se* litigants. For that reason, Petitioner's reliance on *Westmoreland v. Vaidya*, 222 W. Va. 205, 664 S.E.2d 90 (W. Va. 2008) and *Giambalvo v. United States*, No. 1:11CV14, 2012 U.S. Dist. LEXIS 38925 (N. D. W. Va. Mar. 22, 2012) is misplaced.

In *Westmoreland*, the Supreme Court of Appeals of West Virginia determined whether a *pro se* Appellant demonstrated a good faith and reasonable effort to comply with W. Va. Code § 55-7B-6 and further its purposes prior to initiating suit. In that case, the *pro se* Appellant served a "notice of intent to bring suit" on the defendant-health care provider which included a statement that "this notification meets the criteria in W. Va. Code § 55-7B-6(c). *See Id*., 222 W. Va. at 208. The Court held that, because the *pro se* Appellant acted in good faith and reasonably relied on the exception to the certificate of merit requirement, namely, W. Va. Code § 55-7B-6(c), the trial court should have afforded him a reasonable time to secure a certificate of merit. *See Id*., 222 W. Va. at 212.

Likewise, in *Giambalvo*, the district court considered whether the *pro se* litigant demonstrated "a good faith and reasonable effort" to comply with the requirements of W. Va. Code § 55-7B-6. 2012 U.S. Dist. LEXIS 38925, at *15 (citing *Westmoreland v. Vaidya*, 222 W. Va. 205, 664 S.E.2d 90 (W. Va. 2008)). Giambalvo, who was a federal inmate, filed a timely complaint and attached a document entitled "In lieu of Medical Screening Certificate of Merit. W. Va. Code

§ 55-7B-6(c)" in which he asserted that no expert screening certificate of merit was necessary. *Id*., at *6-7. The district court concluded that, "[l]ike the Appellant in *Westmoreland*, Giambalvo has demonstrated a good faith and reasonable effort to comply with the requirements of § 55-7B-6…as evidenced by the filing of the [attachment to the complaint]." *Id*., at *15. The district court did not dismiss the *pro se* complaint based upon Appellant's misunderstanding of his procedural obligations and instead allowed Appellant ninety (90) days to obtain a certificate of merit. *Id*., at *15-16.

Here, Appellant avers that he "made a good faith attempt to comply with West Virginia's statutory requirements" because he "retained an expert, obtained a Certificate of Merit, and mailed it to Defendants thirty (30) days before serving them with the Complaint." Br. at 36. In support of that contention, Appellant relies on the above cited cases, *Westmoreland* and *Giambalvo*, but such reliance is misplaced. The facts in *Giambalvo* are easily distinguishable from the instant case. As was the case in *Giambalvo*, "[c]ourts must read pro se allegations in a liberal fashion and hold those pro se pleadings to less stringent standards than formal pleadings drafted by lawyers." *Braxton v. Tygart Valley Reg'l Jail*, No. 3:18-CV-181, 2020 U.S. Dist. LEXIS 187852, at *3 (N.D.W. Va. Feb. 13, 2020) citing *Haines v. Kerner*, 404 U.S. 519 (1972) (Internal quotations omitted).

Appellant was represented by counsel at all relevant times and has no excuse

for misunderstanding his procedural obligations or failing to comply with the requirements of the MPLA. Appellant provides no legitimate explanation for his failure to comply with the MPLA other than the "rapidly approaching statute of limitations." JA at 341. This explanation is just an excuse for Appellant's dilatory conduct and not an exception to the pre-suit notice requirements.

Additionally, Appellant did not allege that his medical negligence claims are "based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." *See* W. Va. Code § 55-7B-6(c). Instead, Appellant simply states that he "complied with the [West Virginia statute's] substantive requirement of communication theories of the case by mailing a copy of the Complaint along with his notice of litigation." ECF No. 15 at 37. As stated above, Appellant filed his initial Complaint on March 22, 2020 in the United States District Court for the District of Columbia and, five days later on March 27, mailed a copy of the filed Complaint and a document entitled "Preliminary Expert Report" to USP Hazelton. *See* JA 350-373.

Appellant demonstrably failed to comply with W. Va. Code § 55-7B-6, and his eleventh-hour mailing should not be considered a good faith or reasonable effort to comply with W. Va. Code § 55-7B-6. Therefore, the district court order should be affirmed.

## III.  APPELLANT'S MEDICAL NEGLIGENCE CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

As addressed by the district court, Appellant's negligence claims against Defendants-Appellees Bird and Mims are barred by the applicable statute of limitations. *See* JA 405-406.

Pursuant to the provisions of the FTCA, the administrative process must be fully exhausted before FTCA claims may be brought in an action in federal court. *See* 28 U. S. C. § 2675(a). Administrative exhaustion under the FTCA requires an inmate, or claimant, to submit written notification of the incident accompanied by a sum certain claim for monetary damages to the federal agency responsible for the activities giving rise to the claim. *See* 28 C. F. R. § 14.2(a); (b)(1). The inmate may file suit in an appropriate U. S. District Court only after final denial of the claim. *See* 28 C. F. R. § 14.9.[7]

The claimant must then commence suit within six months of the denial. *See* 28 C. F. R. § 14.9. "[T]he FTCA's statute of limitations provides that a tort claim against the United States 'shall be forever barred…unless action is begun within six months after the date of mailing…of notice of final denial of the claim by the agency to which it was presented." *Zander v. United States*, 494 F. App'x 386, 387 (4th Cir. 2012) (quoting 28 U. S. C. § 2401(b)).

---

[7] An administrative tort claim is considered denied if the agency denies the claim in writing or if six months pass without action on a properly filed administrative claim. *See* 28 U. S. C. § 2675(a).

Here, Appellant filed an administrative tort claim on a Standard Form 95 (SF-95) on or about August 13, 2017, seeking $25,000,000 for an injury, denial of medical care, torture, and retaliation all related to events at USP Sandy. *See* JA 217. This administrative claim does not address Petitioner's claims concerning alleged negligence on the part of Defendants-Appellees Mims and Bird. The district court noted that records maintained by the BOP establish that the only SF-95 filed by Appellant regarding USP Hazelton sought $5,000,000 for personal injury and property damage. *See* JA 406 at fn. 2. That administrative claim was denied in a letter dated March 21, 2019, and Appellant was specifically notified that if he was not satisfied with the BOP's determination, he may file suit within six (6) months after the date of the letter in the appropriate district court. *See* JA 406. However, Appellant did not file his initial complaint in this matter until March 22, 2020 – over one (1) year after the denial. *See* JA 12.

Accordingly, the statute of limitations as provided in 28 U. S. C. § 2401(b) bars Appellant's attempt to raise a FTCA claim as to Defendants-Appellees Mims and Bird.

## **CONCLUSION**

For the foregoing reasons, this Could should affirm the judgment of the district court.

Respectfully submitted,

RANDOLPH J. BERNARD
ACTING UNITED STATES ATTORNEY

/s/ Maximillian F. Nogay
Christopher J. Prezioso
Maximillian F. Nogay
    *Assistant United States Attorneys*
Northern District of West Virginia
United States Attorney's Office
P.O. Box 591
1125 Chapline Street, Suite 3000
Wheeling, WV 26003
(304) 234-0100 (telephone)
(304) 234-0112 (facsimile)

*Counsel for Defendants-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Defendants-Appellees aver that the facts and legal contentions are adequately presented in the materials before this Court, and oral argument would not aid the decisional process.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 7,251 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/ Maximillian F. Nogay     

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 19th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court using the appellate CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Maximillian F. Nogay