RECORD NO. 21-6206

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────────────────

**EDWARD NELLSON**

*Appellant,*

**v.**

**JOHN DOE, Warden of USP Hazelton**
**JOHN DOE, Lt. at USP Hazelton**
**GREGORY MIMS, and**
**LEIGH BIRD**

*Appellees.*

─────────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF WEST VIRGINIA
Wheeling

─────────────────────────

# REPLY BRIEF OF APPELLANT

─────────────────────────

Mario B. Williams
NDH LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
mwilliams@ndh-law.com
Tel: (404) 254-0442
*Counsel for Edward Nellson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………..…………..i

ARGUMENT AND AUTHORITIES……………………………………………..2
I.   Mr. Nellson successfully stated an Eighth Amendment deliberate
     indifference claim………………………………………………...............3
     A. The District Court improperly concluded that Mr. Nellson failed to
        satisfy the objective component of the deliberate indifference
        standard…………………………………………………....................3
     B. Defendants were subjectively aware of Mr. Nellson's serious medical
        needs…………………………………………………........................5
     C. The District Court improperly concluded that Defendants acted
        reasonably when they placed Mr. Nellson in the SHU without
        assistance of a wheelchair or a walker ……………………………....7
        1. Defendants acted unreasonably when they placed Mr. Nellson
           in SHU without assistance of a walker or
           wheelchair…………………………………………………..7
        2. The District Court committed two errors of law in concluding
           that Defendants acted reasonably by placing Mr. Nellson in
           SHU without ambulatory
           assistance…………………………………………………...9

II.  **The District Court improperly held that Mr. Nellson failed to plead
     individual involvement on the part of Defendants Coakley and
     Soule**…………………………………………….................................11
III. **Mr. Nellson's medical malpractice claims against Defendants Mims
     and Byrd were improperly dismissed** ……………………………….....13

CONCLUSION ……………………………………………………………….15

CERTIFICATE OF COMPLIANCE…………………………………………17

# TABLE OF AUTHORITIES

*Asrat v. Barr*,
399 F. Supp. 3d 505 (E.D. Va. 2019)……………….……………….……...….….5

*Bennett v. Georgetown Cty. Det*,
 2010 WL 5866595 (D.S.C. Nov. 4, 2010)…………………………………..….. 12

*Brown v. Lamanna*,
 304 F. App'x 206 (4th Cir. 2008)………………………….……..……… 6, 7, 8, 9

*Cummings v. Klee*,
 410 F. Supp. 3d 837, 846 (E.D. Mich. 2019)…………...………………….…8, 9

*Estelle v. Gamble*,
 429 U.S. 97 (1976) …………….…………………………………………….3, 10

*Giambalvo v. United States*,
No. 1:11CV14, (N.D.W. Va. Mar. 22, 2012)…………...……………..…….13, 15

*Gordon v. Schilling*,
 937 F.3d 348 (4th Cir. 2019)…...………………………………..…………… 8

*Helling v. McKinney*,
 509 U.S. 25, (4th Cir. 1993)………………………………………...…………… 8

*Heyer v. United States Bureau of Prisons*,
 849 F.3d 202, (4th Cir. 2017)……...………………………………..……… 8, 9

*Iko v. Shreve*,
 535 F.3d 225 (4th Cir. 2008)…………...……………………………… 1, 10, 11

*LaFaut v. Smith,*
 834 F.2d 389 (4th Cir. 1987)……………..………………………………….3, 8, 9

*McElligott v. Foley*,
182 F.3d 1248, 1255 (11th Cir. 1999) …………….……..………………….8, 9

*Miltier v. Beorn*,
 896 F.2d 848 (4th Cir. 1990)…...………………………………..………… 1, 7

*Scinto v. Stansberry*,
    841 F.3d 219 (4th Cir. 2016)…………………………….……………3, 5, 6, 7

*Shakka v. Smith*, 71 F.3d 162 (4th Cir. 1995)
    71 F.3d 162 (4th Cir. 1995) ……..………………………………………… 3, 8, 9

*Shaw v. Stroud*,
    513 F.3d 791, 799 (4th Cir. 1994)…………………………………………12, 13

*Stanley v. United States*,
    321 F.Supp.2d 805 (N.D. W.Va. 2004)…………………………………………13

*Trulock v. Freeh*,
    275 F.3d 391 (4th Cir. 2001)……..…………………………………….....… 11

*Ward v. LiNA Med. USA, Inc.*,
No. 2:20-CV-00334, 2021 WL 45388, (S.D.W. Va. Jan. 5, 2021)……………….2, 14

## **ARGUMENT AND AUTHORITIES**

As discussed below, the District Court's ruling dismissing medical malpractice and *Bivens* claims against four Defendants at USP Hazelton was in error. JA 387. First, Mr. Nellson successfully stated an Eighth Amendment claim. Section I, *infra*. Defendant Appellees' brief and the District Court's arguments that Mr. Nellson received medical care for seizures ignores the evidence that he received no assistance for walking when he was placed in the SHU and that numerous medical providers found that he was unable to walk. *See* Doc. No. 21 at 21; JA 399-400. Further, a prison official's response to a serious medical need must be reasonable. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The Defendants-Appellees and the District Court ignored *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008), where this Court found supervisory officials acted unreasonably when they had actual knowledge of a prisoner's mistreatment. *See* Doc. No. 21 at 21; JA 399-400.

Second, Mr. Nellson sufficiently alleged Defendants Warden Coakley and Lt. Soule's personal involvement to establish supervisory liability when they placed Mr. Nellson in SHU without a wheelchair or walker. Section II, *infra*. Again, the Defendant-Appellees relied on *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) but ignored this Court's ruling in *Iko*, 535 F.3d at 242 where this Court found supervisory officials cannot defer to medical providers who exercised no judgment. Doc. No. 21 at 25.

1

Third, Mr. Nellson's state law claims against Defendants Bird and Mims were improperly dismissed because Mr. Nellson substantially complied with pre-suit notice requirements under the W. Va. Code § 55-7B-6. Section III, *infra*. Defendants-Appellees ignore opinions by West Virginia federal courts holding that dismissal is not appropriate where pre-suit documents were actually provided. *Ward v. LiNA Med. USA, Inc*., No. 2:20-CV-00334, 2021 WL 45388, at *6 (S.D.W. Va. Jan. 5, 2021).

## I.  Mr. Nellson successfully stated an Eighth Amendment deliberate indifference claim

The District Court failed to properly conclude that the Defendants-Appellees acted with deliberate indifference to Mr. Nellson's serious medical needs, his need for a wheelchair or walker when he was placed in SHU. As discussed below, the District Court failed to consider the facts in the light most favorable to the nonmoving party when considering whether Mr. Nellson suffered from an objective medical condition. *See* JA 399. Second, the District Court made several legal errors in finding that Defendants responded reasonably and were not deliberately indifferent to Mr. Nellson's serious risk of harm. *See* JA 396, 400 (concluding dismissal was appropriate because officials relied on a written policy and supervisory officials could defer to medical providers).

To prevail on an Eighth Amendment challenge, plaintiffs must prove that prison officials acted with deliberate indifference to serious medical needs. *See*

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). This inquiry consists of both objective and subjective tests. *Farmer*, 511 U.S. at 834, 837.

### A. The District Court improperly concluded that Mr. Nellson failed to satisfy the objective component of the deliberate indifference standard

The first part of the objective component of a deliberate indifference claim is satisfied by a serious medical condition. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). A medical condition is serious when it has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See id*. The Fourth Circuit and numerous courts throughout the country have held that a medical condition that threatens one's ability to walk is unquestionably a serious medical injury. *See e.g., Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) ("We do not doubt that the failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in some circumstances"); *LaFaut v. Smith*, 834 F.2d 389, 393-94 (4th Cir. 1987).

The Defendants-Appellees and the District Court ignored evidence showing that Mr. Nellson was objectively unable to walk while he was at FCC Hazelton from December 12, 2016, to November 13, 2017. Medical providers repeatedly noted that Mr. Nellson was unable to walk. In December 2016, Mr. Nellson told Health Services at FCC Hazelton that he could walk unsupported and he presented with a

3

walker. JA 508 at ¶ 6. On December 20, 2016, Mr. Nellson's medical records stated, "Inmate marginally able to ambulate with assist X2." JA 152, ¶ 47. His medical records included repeated findings that Mr. Nellson could not walk unassisted, was experiencing excruciating pain, and had been given a wheelchair at times. *Id*. ¶ 48. On September 8, 2017, when seen at a Neurology Care Clinic, Mr. Nellson was able to stand but was unsteady without support and so he was ambulating with the use of a wheeled walker. JA 510 at ¶ 12. On October 12, 2017, a neurologist noted that Mr. Nellson was unable to stand on his own and needed assistance or a walker. *Id*. ¶ 15.

Also, it is undisputed that despite his inability to walk, Warden Coakley and Lt. Soule twice ordered and placed Mr. Nellson in solitary confinement, referred to as the SHU, without ambulatory assistance. JA 163 ¶¶ 41-44, 54, 64-64. All four Defendants observed Mr. Nellson's inability to walk when Mr. Nellson was placed in the SHU without a wheelchair for three months in May 2017 and then again in September 2017. JA 152, ¶¶ 55, 64-65. As a result of being placed in the SHU without ambulatory assistance for over six months, Mr. Nellson developed sores on his knees that bled and leaked pus because he was forced to crawl on the ground, and he further twisted his spine. JA 167 ¶¶ 57, 58.

The District Court, in a reversible error, concluded that Mr. Nellson failed to prove the objective component. *See* JA 399. The District Court improperly failed to view the facts in light of the non-moving party by favoring the testimony of

4

Defendant-Appellee Bird over Mr. Nellson's extensive medical records in order to reach this conclusion. *Id.* Summary judgment is only appropriate where there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56; *Asrat v. Barr*, 399 F. Supp. 3d 505, 513–14 (E.D. Va. 2019). The District Court noted that there was no evidence that Bird, upon reviewing Mr. Nellson's medical record, could find any findings to support the need of an assistive device for ambulation. *See* JA 399. But the District Court ignored that medical records from Mr. Nellson's first week at FCC Hazelton stating that Mr. Nellson was only marginally able to ambulate. JA 152, ¶ 47. And the Court ignored a number of medical providers beside Bird, over the course of a year, continued to find that Mr. Nellson could not walk or only walk with minimal assistance. *See* JA 508 at ¶ 6; 152, ¶ 47; 510 at ¶¶ 12, 15. Further, it was uncontroverted that Mr. Nellson crawled on the floor when he was placed in the SHU. JA 167 ¶¶ 57, 58.

## B. Defendants were subjectively aware of Mr. Nellson's serious medical injury

Defendants had knowledge of Mr. Nellson's inability to walk and therefore were also aware of the substantial risk of harm he faced when placed in solitary confinement without ambulatory assistance. A defendant's subjective knowledge can be proven through direct evidence or circumstantial. *See Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016); *Farmer*, 511 U.S. at 842-43. The defendant's

subjective awareness of a risk may be shown by circumstantial evidence if the risk is obvious. *Scinto*, 841 F.3d at 226; *Farmer*, 511 U.S. at 842. For example, a risk is obvious if "longstanding, pervasive, well-documented, or expressly noted," and thus a defendant "must have known." *Farmer*, 511 U.S. at 842-43. In *Brown v. Lamanna*, 304 F. App'x 206, 208 (4th Cir. 2008), the Fourth Circuit found that defendant prison officials were aware that an inmate needed crutches because the inmate's condition was "blatant and obvious — he could not stand or walk without assistance and was constantly in a great deal of pain."

Defendants were subjectively aware that that Mr. Nellson could not walk and were therefore aware of the risk of harm he faced if placed in the SHU without ambulatory assistance. For example, Defendant Bird reviewed Mr. Nellson's medical records, which included repeated findings that Mr. Nellson could not walk unassisted and had been given at wheelchair at times. JA 165, ¶ 48. Dr. Mims observed all of Mr. Nellson's medical records and observed that Mr. Nellson could not walk. JA 166 ¶ 50. Lt. Soule likewise saw Mr. Nellson in the SHU and knew he could not walk. JA 164 ¶ 43.  Warden Coakley also read Mr. Nellson's medical records and read Mr. Nellson's multiple grievances and therefore knew that Mr. Nellson could not walk when Warden Coakley placed Mr. Nellson in SHU without an assistive walking device. JA 152 ¶ 41. Defendants were subjectively aware that Mr. Nellson could not walk because it was expressly noted in Mr. Nellson' medical

records. *See Farmer*, 511 U.S. at 842.  Further, Defendants were subjectively aware that Mr. Nellson needed ambulatory assistance because it was obvious that he could not stand without assistance. *See e.g.*, JA 164 ¶ 43; Brown, 304 F. App'x at 208.

## C. The District Court improperly concluded that Defendants acted reasonably when they placed Mr. Nellson in the SHU without assistance of a wheelchair or a walker

### 1. Defendants acted unreasonably when they placed Mr. Nellson in SHU without assistance of a walker or wheelchair

The disregard prong can be proven in several ways. While considered part of the subjective component, the requirement that a defendant disregard a risk of harm actually evaluates his response (or lack thereof) by an objective 'reasonableness' standard. *Scinto*, 841 F.3d at 226; *Farmer*, 511 U.S. at 847. The Supreme Court has noted that a prison official is "free from liability if they responded reasonably to the risk" and "prison officials who act reasonably cannot be found liable." *Farmer*, 511 U.S. at 847.

A defendant's disregard of a known medical risk is shown if a defendant fails to respond at all to an inmate's known medical needs. *Scinto*, 841 F.3d at 226. Generally, as long as there has been an exercise of professional judgment—even a mistaken or incompetent one—the Constitution has been satisfied. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

However, "the mere fact that prison officials provide some treatment does not mean they have provided 'constitutionally adequate' treatment." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 211 (4th Cir. 2017). A defendant's deliberate disregard of the risk can be found through providing care that is "grossly inadequate," making "a decision to take an easier but less efficacious course of treatment," or providing "medical care which is so cursory as to amount to no treatment at all." *Heyer*, 849 F.3d at 211 (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Finally, a prison official cannot simply monitor an inmate's health condition and withhold treatment or ignore a condition that is very likely to cause harm in the future. *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993); *Gordon v. Schilling*, 937 F.3d 348, 359 (4th Cir. 2019).

Numerous courts have found that a prison official's failure to provide ambulatory assistance to an inmate who is unable to walk demonstrates deliberate indifference. *See e.g.*, *Shakka*, 71 F.3d at 167; *LaFaut*, 834 F.2d at 393-94; *Brown*, 304 F. App'x at 208. In *LaFaut*, the Fourth Circuit found that prison officials violated the Eighth Amendment when the prison denied providing basic needs for a paraplegic prisoner, including ambulatory therapy, for eight months. 834 F.2d at 393-94. In another example, a district court found that forcing a wheelchair bound inmate to scoot or crawl upstairs violates the Eighth Amendment. *Cummings v. Klee*, 410 F. Supp. 3d 837, 846 (E.D. Mich. 2019).

Here, Mr. Nellson's Eighth Amendment rights were violated when Defendants, knowing of his inability to walk, placed Mr. Nellson in the SHU without a walker or wheelchair. JA 152, ¶¶ 40-44; *see Shakka*, 71 F.3d at 167; *LaFaut*, 834 F.2d at 393-94; *Brown*, 304 F. App'x at 208. Being placed in the SHU without ambulatory assistance, Mr. Nellson crawled on the floor, developed sores on his knees that bled and leaked pus, and strained his back. JA 152, ¶¶ 56-58. In contrast to the District Court's opinion, this is not a case of "mere disagreement" with a medical provider. *See* JA 400-401. In this specific context, a failure to provide ambulatory assistance to an inmate and forcing him to crawl and risk further injury to himself amounts to gross negligence or no medical care at all. *Heyer*, 849 F.3d at 211 (quoting *McElligott*, 182 F.3d at 1255). As a district court noted in *Cummings*, "[s]ummary judgment is not appropriate where a reasonable jury could find that requiring [an inmate] to "scoot" up and down stairs when he cannot walk, despite his back pain and frequent falls, was grossly inadequate." 410 F. Supp. 3d at 844.

2. **The District Court committed two errors of law in concluding that Defendants acted reasonably by placing Mr. Nellson in SHU without ambulatory assistance**

Defendants-Appellees erroneously insist that deferring to a prison's policy of treating inmates is equivalent to deferring to a medical provider's course of treatment for a particular inmate. Doc. No. 21 at16.  Whether Defendants Warden Coakley, Lt. Soule or other defendants followed a written policy does not immunize their actions.

*See Ruiz v. Estelle*, 37 F. Supp. 2d 855 (S.D.Tex. 1999); *Johnson v. Wright*, 412 F.3d 398, 406 (2d Cir. 2005). Following a prison's paper policies says nothing about whether the actual care provided is constitutional: "constitutional policies do not necessarily ensure constitutional practices." *Ruiz*, 37 F. Supp. 2d 855. As the Second Circuit noted, courts should only defer to a defendant's medical judgment with respect to a *particular* patient, not a policy extending to all patients generally. *See Johnson*, 412 F.3d at 406. Even if the prison policy relied on by Defendants is generally constitutional, its particular application to Mr. Nellson, depriving him of a wheelchair in SHU for many months, was unconstitutional. *See* JA 400; *Ruiz*, 37 F. Supp. 2d 855; *Wright*, 412 F.3d at 406.

Finally, whether non-medical supervisory personnel, like a warden, can rely on a medical staff's decision is irrelevant if an inmate received no medical treatment whatsoever. *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (distinguishing *Militer,* 896 F.2d at 854). In *Iko*, the Fourth Circuit distinguished *Militer*, the precedent on which the Defendant-Appellees and District Court rely, because it was undisputed that an inmate received no medical assistance whatsoever and therefore there was no medical opinion to which the supervisory officers could have deferred. *Id*.; *see* JA 396. Supervisory defendants in *Iko* were held liable because they had actual knowledge of the prisoner's mistreatment after a prisoner was pepper sprayed, a

nurse refused to treat the prisoner, and the prisoner collapsed in their presence. 535 F.3d at 242.

Nothing in the record supports that placing Mr. Nellson in SHU without ambulatory assistance was a medical decision. Defendant's own affidavit states that the decision to place Mr. Nellson in SHU was an administrative decision made with no regard to Mr. Nellson's medical condition. JA 507 at 3. There is no evidence or allegation that medical personnel recommended placing Mr. Nellson in the SHU or that they recommended he be placed there without a walker or a wheelchair. JA 387 at 10-11. There is, therefore, no medical decision on which the supervisory defendants could rely. *Id.* Like in *Iko*, here, Warden Coakely and Lt. Soule had actual knowledge of Mr. Nellson's mistreatment because they saw that Mr. Nellson was forced to crawl on the floor of the SHU without any assistance. 535 F.3d at 242; JA 152, ¶¶ 54-57.

## II. The District Court improperly held that Mr. Nellson failed to plead individual involvement on the part of Defendants Coakley and Soule

Liability in a *Bivens* action is based upon each defendant's own constitutional violations. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). A plaintiff must show that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) the supervisor responded so inadequately as to show

deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the inaction and a plaintiff's alleged constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Acquiescence or gross negligence is sufficient to make out a supervisory claim under the Eighth Amendment. *Bennett v. Georgetown Cty. Det*., No. C.A. 2:10-0762, 2010 WL 5866595, at \*4 (D.S.C. Nov. 4, 2010).

As stated in the Complaint, Mr. Nellson alleged that Warden Coakley (1) signed, reviewed, and approved the placement of Mr. Nellson in SHU without an assistive walking device for a total of six months, (2) knew or should have known that Mr. Nellson could not walk unassisted, and (3) read and heard of Mr. Nellson's multiple grievances and complaints and took no action. JA 152, ¶ 41. And Mr. Nellson alleged that Lt. Soule approved Mr. Nellson's placement in SHU without a wheelchair or a walker, knew of Mr. Nellson's inability to walk but failed to report it, and knew that Mr. Nellson had developed suppurating calloused on his knees. JA 152, ¶ 43. Thus, Warden Coakley and Lt. Soule had actual or constructive knowledge that their subordinates were placing Mr. Nellson in the SHU without a walker despite Mr. Nellson's inability to walk and despite that he developed suppurating calloused and they acquiesced to that. JA 152 ¶ 41, 43. Their authorization and condonation of this decision, in light of Mr. Nellson's worsening

12

conditions, caused Mr. Nellson's constitutional injury to further deteriorate. *See Shaw*, 13 F.3d at 799.

Further, as discussed above, and contrary to Defendants-Appellees' and the District Court's contention, like in *Iko*, Warden Coakley and Lt. Soule can be held liable when they had actual knowledge of Mr. Nellson's mistreatment and there is no medical judgment on which they can defer. 535 F.3d at 242; JA 387 at 10-11.

## III.    Mr. Nellson's medical malpractice claims against Defendants Mims and Byrd were improperly dismissed

The District Court dismissed medical malpractice claims against Defendants Mims and Bird for failing to comply with W.Va. Code § 55-7B-6's pre-filing requirements. JA 401. The District Court relied on a 2004 ruling which noted that the West Virginia Supreme Court had found such defects as to filing requirements to be substantive, not procedural, requirements and this therefore warranted more severe sanction of dismissal. *Stanley v. United States*, 321 F.Supp.2d 805, 806–807 (N.D. W.Va. 2004). In subsequent rulings, the West Virginia Supreme Court reversed course and held that noncompliance with pre-suit requirements is a procedural defect that does not warrant dismissal. *See Westmoreland v. Vaidya*, 664 S.E.2d 90, 96 (W. Va. 2008). Both in *Westmoreland,* 222 W. Va. at 212 and in *Giambalvo v. United States*, No. 1:11CV14, at *13-15 (N.D.W. Va. Mar. 22, 2012), courts found that where a plaintiff demonstrated a good faith and reasonable effort

to comply with the requirements of § 55-7B-6 dismissal was not appropriate on this basis.

West Virginia federal courts have not ordered a dismissal where pre-suit documents were actually provided. *Ward*, 2021 WL 45388, at *6 (S.D.W. Va. Jan. 5, 2021). In *Ward*, upon a review of opinions of the West Virginia Supreme Court, the district court noted that none of the cases found dismissal appropriate except where the plaintiff failed entirely to provide pre-suit documents. *Id*. The district court noted it would be the rare case where pre-suit documents were actually provided and still fell short of the standard that a plaintiff demonstrates "good faith and reasonable effort to further the statutory purposes." *Id*.

Here, Mr. Nellson demonstrated a good faith and reasonable effort to comply with the requirements of West Virginia Code section 55-7B-6(b). West Virginia W. Va. Code Section 55-7b-6(b) requires that the notice of claim include a statement of the theory of liability and a list of all health care providers and facilities to whom notice is being sent, in addition to a screening certificate of merit. Mr. Nellson retained an expert, obtained a Certificate of Merit, and mailed it to Defendants thirty (30) days before serving them with the Complaint. In addition, Mr. Nellson mailed a copy of the Complaint and a "Preliminary Expert Report" to Defendants. The Complaint contains a theory of the case and listed each and every health care provider to whom notices of claim were being sent. Consistent with *Ward*, where a

plaintiff actually provided pre-suit documents, here dismissal based on failure to comply with the pre-suit requirements is unwarranted. No. 2:20-CV-00334, 2021 WL 45388, at *6.

Defendants-Appellees' efforts to distinguish *Westmoreland* and *Giambalvo* from this case fail. Defendants-Appellees' do not cite to any case concluding that *Westmoreland* and *Giambalvo* are expressly limited to only *pro se* inmates. Indeed, such a case would severely limit the underlying rationale of *Westmoreland* and *Hinchman*, where the West Virginia Supreme Court has stated its desire ensure citizens' access to courts and avoid dismissal on purely statutory grounds without reference to whether the plaintiff was represented by counsel. *Hinchman*, 217 W. Va. 378, 618 S.E.2d 387; *see also Westmoreland*, 664 S.E.2d at 99 (Starcher, J. concurring) ("[P]rocedural humps should not be interpreted to restrict, delay, or deny citizens' access to the courts.").

## **CONCLUSION**

For all of the points of error enumerated above, Mr. Nellson requests that this Court reverse the decision of the lower court, re-instating Mr. Nellson's claims against all Defendants.

/s/ MARIO B. WILLIAMS
Mario B. Williams

**NDH LLC**
44 Broad Street NW, Suite 200

Atlanta, GA 30303
(404) 254-0442/(404) 935-9391 FAX
mwilliams@ndh-law.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(1) because it contains 3,635 words, excluding the part of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complied with the typeface requirements of Fed. R. App P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

<u>/s/ Mario B. Williams</u>

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2021, I electronically filed the foregoing with the Clerk of Court using the appellate CM/ECF system, which will automatically send a copy of said filing to all counsel of record.

/s/ Mario B. Williams